### 20607. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.* ENECKS.

DECIDED JULY 15, 1930.

*Jones, Evins, Powers & Jones, John C. Hollingsworth,* for plaintiff in error.

*Overstreet & Overstreet,* contra.

Luke, J. Parnelle Enecks, by his next friend, W. R. Enecks, filed his petition against the Mutual Life Insurance Company of New York, alleging substantially as follows:

■ Defendant has an agent, J. R. Thompson, in said county. 2. On April 13, 1926, defendant issued to plaintiff two policies of insurance, copies of which are attached to the petition, and plaintiff paid the full amount of premiums thereon, to wit $52.98. The policies provide for stated monthly payments by the insurance company if the insured should become totally and permanently disabled. 3. When said policies were issued, plaintiff's age was fifteen years. 4. All premiums have been paid on said policies. 5. "During the early part of 1927 plaintiff became ill and consulted a physician, and, about February, 1927, said physician diagnosed and pronounced his trouble kidney trouble, known as Bright's disease or nephritis, which disease caused a weakened condition of the heart. This disease steadily grew worse, and during the month of June, 1927, the plaintiff became totally and permanently disabled as the result of said disease, which disability has continued from then until now, and is continuous, permanent, and total." 6. "On or about August 1, 1927, plaintiff . . gave defendant written notice of such disability. . . ." 7. "Defendant has become indebted to plaintiff upon said policies for such disability in the sum of $50 per month, commencing with the month of July, 1927, with interest at seven per cent., as follows: upon the first $50 from August 1, 1927, and upon a like sum of $50 on the first of each month thereafter, up to and including the month of February 1929." 8. "Defendant is further indebted to plaintiff for all premiums paid . . since said disability arose, with interest thereon at seven per cent., as follows: on October 12, 1927, $55.10; on April 12, 1928, $55.10; on October 12, 1928, $55.10, the premiums on said policies having been changed from annual to semi-annual payments." Wherefore plaintiff prays judgment against the defendant "for the principal sum of $950 for the monthly payments, including March 1, 1929; $165.30 for return premiums, a total of $1115.30, with interest thereon at seven per cent. per annum, as follows: upon $50 from August 1, 1927," etc.

In its answer the defendant admitted paragraphs 1, 2, 3, and 4 of the petition, denied paragraphs 5, 7, and 8, and, answering paragraph 6 of the petition, stated that plaintiff gave defendant a

written notice of a claim of disability on or about October 20, 1927, but denied the remaining allegations in reference to notice.

The trial resulted in a verdict for the plaintiff "for $1050 for monthly payments, $165.30 for return premiums, $116.51 interest to date,—total $1331.81."

The first question for consideration is raised by defendant's exceptions pendente lite to the court's judgment overruling certain grounds of a special demurrer to the petition. Paragraph 5 of the petition, with the following amendment thereto, met paragraph 1 of the demurrer: "As a result of said Bright's disease, or nephritis, plaintiff has, since July 1, 1927, been totally, continuously, and presumably permanently disabled and incapacitated from following any gainful occupation, as provided by said contract of insurance, and since said date plaintiff has not engaged in any gainful occupation whatsoever. "Paragraph 2 of the demurrer was to an immaterial part of paragraph 6 of the petition, and was sustained. The third and last ground of the demurrer was that the items sought to be recovered in paragraph 8 of the petition were not recoverable. The petition alleges that notice of the plaintiff's disability was given defendant on August 1, 1927. The contract of insurance contains this provision: "The company will also, after receipt of such due proof of loss, waive payment of each premium as it thereafter becomes due during such disability." In so far as the pleadings are concerned, the defendant was not entitled to the premiums, and we think the court properly overruled the last ground of the demurrer.

The motion to grant a nonsuit will not be considered, for the reason that a motion for a new trial, containing the ground that the verdict was contrary to the evidence and without evidence to support it, was made and passed upon. See *Martin* v. *Yonce,* 163 *Ga.* 694 (4) (137 S. E. 17).

The first ground of the amendment to the motion for a new trial complains of the court's refusal to give a written charge to the effect that if the application for insurance gave the insured's occupation as that of a schoolboy, and the evidence disclosed that he continued in school during the term intervening between the date of the application and the time suit was filed, his occupation would be that of a student or pupil. The court did charge as follows: "If you find, from the testimony, that the insured was a school-

boy, then the terms of the contract will apply equally to his duties as a schoolboy." We hold that this ground discloses no reversible error. The court's charge that if a life-insurance policy is capable of two constructions, the interpretation most favorable to the insured must be accepted, is no ground for a reversal of the judgment.

Special ground 3 complains that in charging the jury the court used the phrase "usual avocation" synonymously with the word "vocation." It is true that the dictionary defines avocation as "a subordinate or occasional occupation," and that vocation means one's regular calling or business. However, we can not conceive that use of the word "avocation" either confused the jury or injured the defendant's case, especially when considered in connection with the context and in the light of the entire charge.

The following excerpt from the charge of the court, which is set out in the fourth and last special ground, is no reason for reversing the judgment: "If you find, as contended by the defendant in this case, that no total disabilty existed at any time after the issuance of this insurance policy, of course you would render a verdict in favor of the defendant." William R. Enecks, the father of Parnelle Enecks, testified: that upon Dr. Doster's advice the plaintiff ceased work in January, 1927; that after any exercise the boy would sweat and tremble, and witness requested his teacher to be very light on him, and to send him home if he showed signs of being tired; that plaintiff did not engage in any manual labor between the time suit was brought and the time he became disabled; that plaintiff attended school during the spring and fall of 1927; that plaintiff tried to pitch a game of baseball, but gave out and had to be brought home and kept there for several days; that the boy sold papers, but stopped when the doctor told him not to get chilled; that plaintiff had not engaged in any gainful occupation since January, 1927; that the boy was mentally all right; that witness paid the Georgia Normal School $38 to keep him six weeks; that from the time plaintiff was eleven years old until he was disabled he clothed himself; that during the preceding year he took a business course at the Georgia Normal School; that he had been demonstrating automobiles, but gave up that job; that he could not follow any occupation with the preparation he had; and that the witness had six children, and if the plaintiff "was sound and well, he sure

would be working." This witness also swore as follows: "All I can testify of my own knowledge as to the boy's total disability is his tendency to get nervous: he trembles all over, and you can hear his heart beat ten feet from him."

Parnelle Enecks testified that he was taking a light course at the Georgia Normal School, and was doing office work to help defray his expenses; that he was about the office and on the job about half an hour at the time, and sometimes would use a typewriter for as long as fifteen minutes; that he played baseball in 1926 without any ill effects; that he played in 1927 for two or three innings and had to quit; that if he wrote on a typewriter too long he would get nervous and have to quit; that he attended Rocky Ford High School during the 1927-28 term, and graduated there in May or June, 1928; that during this time he participated in four games of basket-ball, completing two games, and failing to finish the other two because of minor injuries; that this was after he quit delivering papers; that he gave up a job of demonstrating automobiles; that he took a course of bookkeeping, typewriting, shorthand, and English at the Georgia Normal School, and "this year" was taking history, English, education, and mathematics; that he was also doing work on the side for one of the professors; that he supposed his occupation was that of a schoolboy, if that could be called an occupation; that for a certain length of time he could do anything not requiring physical effort; that fifteen minutes was about as long as he could write on a typewriter without getting nervous; that he thought a fellow would be hard up to want to hire a person who could do no more work than he could; that he had not played baseball since 1928, when he gave out, but did play in 1927; that the average number of courses carried at the Georgia Normal School was six or seven; that eighteen hours was the required course, and witness took twelve; and that he was eighteen years old at the time of trial and weighed between 145 and 153 pounds, and that he did not think that his weight had changed since 1927.

Dr. H. M. Doster, sworn for the plaintiff, testified: that the boy had Bright's disease in 1927; that at that time he was doing a little work at school—was firing a boiler, and that witness advised him to stop; that he advised plaintiff to do only light work and to desist from all forms of athletics; that witness did not think plaintiff's condition was dangerous, but that he advised him not to

go back to work; that this was in the latter part of 1927; that any kind of excitement would have been dangerous to plaintiff; that witness thought plaintiff could "do some clerical work, stenography and typing, but not eight or ten hours a day;" that if he was doing that sort of work, witness "would not say he was totally disabled;" that he did not know that plaintiff had ever been confined to his bed because of his trouble; that he did not know of any occupation the boy could engage in with safety; and that he did not know of any gainful occupation plaintiff could engage in that he was competent to do. This witness also swore: "I would not say that Mr. Enecks is not able to fill some occupations, but he would have to be careful to save himself. . . I would not swear that Parnelle Enecks now is unable to follow any gainful occupation, because you stated a while ago that he was now doing typing and something to help pay his expenses at school."

Exley Lane, sworn for the defendant, testified substantially as the plaintiff did in regard to his playing basket-ball. He swore also that the plaintiff played on the baseball team in the summer of 1928 with witness, playing through one entire game as pitcher and second baseman, and playing a part of another game.

The other testimony adduced by the defendant throws very little additional light upon the question at issue, and we deem it unnecessary to state it.

Each policy of insurance was for $2500, and each contained the following provisions: "If the insured is totally and presumably permanently disabled before the age of 60, will pay to the insured $25 monthly during disability." "Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation." "Total disability shall, during its continuance, be presumed to be permanent: (a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining life of the insured. (b) If such disability has existed continuously for ninety days."

The attorneys for both plaintiff and defendant insist that the case of *Calo* v. *Ætna Insurance Co.*, 164 *Ga.* 392 (138 S. E. 787), is controlling. It appears in that case that the plaintiff was suffering from pulmonary tuberculosis in an advanced state, and, in the opinion of a doctor, was not physically able to work. This doctor

further testified that if the insured actually worked, he would not say that he was not physically able to work, but that it was unwise for him to do so. As a matter of fact, the insured did work at a cotton mill more than 92 per cent. of the time the mill was in operation, and earned more than 42 per cent. of what a competent and experienced weaver in good health could have earned. The policy of insurance in that case contained this provision: "If such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of the policy." We quote the following pertinent headnotes of the decision in the *Calo* case: "2. Total disability exists when one is wholly disabled from pursuing the usual and customary duties of his employment on which he depends for a living. 3. When the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, although he is still able to perform some parts of his work. Total disability is inability to do substantially all of the material acts necessary to the transaction of the insured's occupation, in substantially his customary and usual manner. 4. Total disability does not mean absolute physical inability to work at one's occupation, or to pursue some occupation for wages or gain; but it exists if the injury or disease of the insured is such that common care and prudence require him to desist, and he does in fact desist, from transacting his business. In such circumstances, total disability exists. 5. If the insured, who was afflicted with tuberculosis; had quit pursuing his occupation of a weaver, on account of his disease, then, under the evidence of the medical experts that it was unwise for him to work in the condition of his health, it would have been for the jury to say whether ordinary care required him to abandon his occupation, and whether total disability existed, under the principle of law that matters of this kind are ordinarily questions of fact for the jury. But as the insured did not abandon his calling on account of his disease, this principle is not applicable." The court held in the *Calo* case that the court properly directed a verdict for the insurance company.

The facts of the case at bar are somewhat unusual. The insured was fifteen years of age when the insurance contracts were written. His father swore that he had earned his clothes since he was eleven

years old, by working at odd times. It appears also that he had demonstrated automobiles and fired a furnace at school, but how many hours a day or for what length of time he worked does not appear. Nor does it appear what he earned. The plaintiff testified that his occupation was that of a schoolboy, if that could be called an occupation. Indeed, the burden of all the evidence is that from the time he was eleven years old he principally occupied his time in attending school, and that such work as he did was done at odd times. If he ever devoted his entire time to any regular gainful occupation, it does not appear from the record. He attended public school regularly during the 1927-28 term and graduated there. While at school he played baseball and basket-ball. While attending the Georgia Normal School he took four courses, and did office work for one of the professors to help defray his expenses. The average student took six or seven courses. Eighteen hours was the required course, and the plaintiff was taking twelve. It does not appear from the record that the plaintiff worked longer or more steadily before his alleged disability than he did afterwards. So far as the record shows, the plaintiff attended school regularly and performed his scholastic duties properly and successfully during the period of his alleged disability. In these circumstances we are of the opinion that the plaintiff failed to carry the burden of showing total disability, and that a verdict was demanded for the insurer. Therefore the judgment overruling the motion for a new trial is reversed.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*