25086. UNION CENTRAL LIFE INSURANCE CO. *v.* ALLAN.

DECIDED JULY 16, 1936.

*Harold Hirsch, Marion Smith, A. S. Clay,* for plaintiff in error.
*Brandon, Hynds & Tindall, Morris Brandon Jr., Walker, Kilbride & Conslangy,* contra.

MacIntyre, J. As beneficiary under a $5000 policy of life insurance issued by the Union Central Life Insurance Company on the life of Joseph Paul Buist Allan, Mrs. Ada Belle Patrick Allan sued the insurer on said policy for $2999.99. The exception is to a judgment overruling a general demurrer to the petition as amended. The following is a sufficiently full statement of the substance of the petition: The policy was an ordinary-life policy issued as of December 13, 1913, the annual premium of $147.60 falling due on that date. On March 25, 1932, the insured borrowed $1543.36 on the policy, giving the insurer his note for that amount. At that time the loan value of the policy was $1620. The insured died on February 8, 1933, after having paid every premium except the one due on December 13, 1932. We quote from paragraph 6 of the petition: "The defendant claimed that it owed plaintiff nothing, . . because it claimed in a letter to plaintiff's attorneys that 'the policy lapsed for failure to pay the premium due December 13, 1932, at which time the total indebtedness against the policy amounted to . . $1610.03, comprising policy advance of $1543.36 and accrued interest of . . $66.67,' and that 'interest on the policy advance was figured from March 25, 1932, to December 13, 1932,' and that 'the cash value of the policy as of December 13, 1932, amounted to . . $1620,' and that 'there remains therefrom net equity of . . $9.97, which amount was sufficient to provide extended insurance for the net amount, namely, $3390 for fifty-two days from December 13, 1932, or until February 3, 1933,' and that since the insured died 'after February 3, 1933, the policy . . was without value at his death.'" We quote from paragraph 7 of the petition as follows: "In addition to 'the cash value of the policy as of December 13, 1932,' of . . $1620 and its net equity as figured by defendant of . . $9.97 . . , there was a dividend due and payable on said policy on December 13, 1932, of . . $29.55 in accordance with the policy's provisions, which defendant did not take into account in determining that the policy was without value, although defendant admits its liability for said dividend as aforesaid." Paragraph 8 reads: "Plaintiff shows that said dividend should have been used by defendant either to reduce the interest, . . if any had accrued, or to reduce the principal of the indebtedness, or it should have been applied to the purchase of paid-up additions to the policy, which in

turn should have been used to increase the term of extension after converting it into cash for an amount not less than the dividend as provided by the policy, and in either case the life of the policy would have been carried beyond the date of the insured's death." Paragraph 11: "The owner of said policy did not elect any of the options provided in paragraph 13 for the application of said dividend." Paragraph 14: "Plaintiff waives . . all claims she might have against defendant, except for the sum of . . $2999.99 and interest. . ." On February 11, 1935, the plaintiff amended her petition by adding the following paragraphs: "1. That the defendant did not offer to J. P. B. Allan during his lifetime the dividend set forth in the petition as being due said Allan, and which the defendant admits to have been due to him. 2. The defendant did not communicate with the said . . Allan after December 13, 1932."

We quote as follows from the amendment of May 28, 1935: "2. That the insured did not before the expiration of the days of grace, which expired thirty-one days after December 13, 1932, exercise any of the options provided in section 14 of said policy, and at no time exercised any of said options with reference to the application of the reserve value of said policy. 3. That the defendant did not inform or notify the insured, or plaintiff during the insured's life, that said dividend had been declared in his favor, nor that it was held for his benefit subject to the terms of the policy. 4. That defendant did not notify . . the insured nor plaintiff, during the life of the insured, of its purpose with reference to the said dividend and cash-surrender value of said policy, nor what it had done or intended to do with either, and after December 13, 1932, did not communicate with the insured at all nor with plaintiff during the insured's life." (Since counsel for the defendant in error specifically state that they do not rely on the allegations of the petition which relate to quarterly premiums, we omit paragraphs 5, 6, 7, 8, and 9 of this amendment.) "10. That the policy does not and did not authorize the application by the defendant of the surrender or loan value to the payment of the interest on the loan or advance at least until March 25, 1933, as the interest was not due until said date; and hence the amount due on the cash or loan value was ample to carry the life of the policy much beyond the date of the death of the insured. 11. The policy does not

authorize the application of the reserve value to the payment of interest on the advance made on the policy, and the reserve value was more than sufficient to pay the advance on the policy in full and to extend the life of the policy beyond the date of the insured's death. 12. That the defendant has never offered to pay her the said dividend in cash, but it did in a letter to her attorney, dated February 21, 1933, state that 'Check for the December 13, 1932, dividend will be sent by the Dividend Division,' and sometime later the company forwarded to her attorney, in a letter dated February 23, 1933, its check for the dividend, payable to 'Estate of Joseph B. Allan, deceased,' the check being dated February 23, 1933. Plaintiff never saw this check, but instructed her attorney not to cash it. These letters were the first news plaintiff ever heard from the defendant about the check or the dividend. 13. That the defendant admitted in a letter to plaintiff's attorney, dated April 18, 1933, that the loan interest was not due until March 25, 1933." (A copy of said letter was attached to the amendment as an exhibit.)

The material parts of the various paragraphs of the policy, a copy of which is attached to the petition as an exhibit, follow: "7. Grace. That a premium shall be deemed to be in default if not paid on the day when due, but a grace of thirty-one days shall be granted for the payment of any premium after the first, subject to an interest charge of six per cent. per annum, during which period the insurance shall continue in force. 8. Payment of Premiums. That all premiums shall be payable in advance. . . After three full years' premiums have been paid in cash, on the failure to pay any subsequent premium or installment thereof this policy shall lapse and its value shall be applied as set forth in article fourteen. . . 12. Contract. That this policy, together with the application, a copy of which is endorsed hereon, shall constitute and contain the entire contract between the parties hereto. . . 13. Dividends. That this policy shall participate in profits, as apportioned by the directors, and that beginning at the end of the first policy year, provided the second year's premium is paid in cash, dividends shall be declared annually during its continuance. Such dividends may be withdrawn in cash; or applied to the payment of premiums; or applied to the purchase of paid-up non-participating additions to the policy; or left to accumulate with interest at three per cent. until the maturity of the policy, subject

to withdrawal at any anniversary thereof. *If the owner of this policy shall not elect any other such option, the dividend shall be applied, on the expiry of the days of grace, to the purchase of paid-up additions, except that if the policy shall lapse the dividend shall be paid in cash. Paid-up additions are convertible into cash at any time at the request of the insured for amounts not less than the original dividends.* [Italics ours.] 14. Values. That after three full years' premiums have been paid in cash, the reserve value at the end of the policy year, computed according to the American Experience Table of Mortality, with interest at . . 3-1/2 per cent. (less a surrender charge in no case exceeding . . 1-1/3 per cent. of the amount of the insurance, and decreasing annually until the fourteenth year, after which there will be no charge), may be used at the option of the owner of this policy in any one of the following ways, all of equal value, as set forth in the following tables, provided there be no indebtedness or advances on this policy: Extended Ins. Applied to the extension of this policy as non-participating term insurance from the date to which premiums have been paid in cash, without any further payment. (Table 1.) The value of any paid-up additions will be used to increase the term of extension." (This being the only option applicable to this case, the other three "ways," or options, need not be stated.) "If no option is exercised, on failure to pay a premium before the expiration of the days of grace such value shall be applied as provided in option 1. . . If there be any indebtedness or advances on this policy, the cash value shall be reduced thereby; the paid-up value shall be reduced proportionately; and the extended insurance shall be for the face value of the policy less the indebtedness and advances and for such term as said reduced cash value will provide." Attached to the petition as Exhibit B is a copy of the paper evidencing the loan of $1543.36. This paper is referred to as "this advance," and by it the policy was assigned to and deposited with the insurer "as sole security for said advance and interest." Section 2 of the paper reads: "On default in payment of any premium on said policy, the policy shall lapse, and this advance, with accrued interest and any other indebtedness on said policy, shall be deducted from the surrender value of the policy." Section 4 reads: "The amount of this advance and accrued interest shall be deducted from any amount payable under said policy."

On March 25, 1932, when the loan value of the policy was $1620, the insured borrowed $1543.36 on the policy. This sum borrowed, plus interest of $66.67 thereon, made a total of $1610.03 due on December 13, 1932, leaving applicable to the purchase of extended insurance $9.97, which was sufficient to provide extended insurance only until February 3, 1933. The insurer contends that the policy was of no value when the insured died on February 8, 1933. Counsel for the beneficiary contend that under section 13 of the policy the dividend of $29.55 due on December 13, 1932, should have been applied to purchase "paid-up additions," and that under section 14 of the contract the value of such paid-up additions should have been used "to increase the term of extension." It being true that if the dividend had been given the direction indicated it would have extended the insurance long past the time of the insured's death, it becomes necessary to determine if, under the contract, said dividend should have been applied to extend the insurance. Since the insured made no election as to the disposal of his dividend, the following clause of section 13 of the policy applies in this case: "If the owner of this policy shall not elect any other such option *the dividend shall be applied, on the expiry of the days of grace, to the purchase of paid-up additions, except that if the policy shall lapse the dividend shall be paid in cash.*" (Italics ours.) Under section 7 of the policy the premium was "in default" if not paid on the day it was due, but the policy continued in force during the thirty-one days of grace allowed for the payment of the premium. Under section 8, "After three full years' premiums have been paid in cash, on the failure to pay any subsequent premium or installment thereof, this policy shall lapse and its value shall be applied as set forth in article fourteen." As long as the policy "continued in force" it had not lapsed, and it did continue in force during the grace period; but after the insured failed to pay the premium when it was due, or during the grace period, it "lapsed." "On the expiry of the days of grace," the policy lapsed; yet the mooted provision stipulates that "the dividend *shall be applied,* on the expiry of the days of grace, to the purchase of paid-up additions." (Italics ours.) Yet the provision concludes: "except that if the policy shall lapse the dividend shall be paid in cash." We have considered carefully the contention of the insurer that it clearly ap-

pears from the policy as a whole that section 13 should be construed as meaning that the dividend shall be applied to the purchase of paid-up additions if the premium is paid before the expiration or during the continuance of the policy. We have also read with especial interest the decision mainly relied on by counsel for the insurer, Williams *v.* Union Central Life Insurance Co., 291 U. S. 170 (54 Sup. Ct. 348, 79 L. ed. 711, 92 A. L. R. 693). In that case the construction of a policy of insurance issued by plaintiff in error was involved, the court holding that the clause, "or if the policy shall lapse, the dividend then due shall be paid in cash," meant what it said, and was "in plain opposition to the contention that the dividend should be applied to an extension of insurance." Section 12 of the policy involved in the Williams case is so different from section 13 of the policy in the instant case that we do not think the case sub judice is controlled by the ruling in the Williams case. It might be interesting to note in passing that the policy declared on here is an older form than the one involved in the Williams case. Whatever may have been the intention of the insurer in changing the form of its policy, section 12 of the policy in the Williams case is much clearer than section 13 of the one involved in the present case. "If a policy of insurance is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the insured." *Massachusetts Benefit Life Asso.* v. *Robinson,* 104 *Ga.* 256 (2) (30 S. E. 918, 42 L. R. A. 261). "Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice." *Johnson* v. *Mutual Life Insurance Co.,* 154 *Ga.* 653 (2) (115 S. E. 14), and cit. "If one provision of a policy is absolutely repugnant to another provision, the one most advantageous to the insured will be enforced, while the other provision will be ignored." *Kesler* v. *Commercial Casualty Insurance Co.,* 39 *Ga. App.* 197, 201 (146 S. E. 506). When read alone, the clause of paragraph 13 of the policy which we are especially considering is contradictory. Construing that clause in the light of the policy as a whole, we do not think that we are warranted in viewing it as do counsel for the

plaintiff in error. Construing the policy liberally in favor of the object to be accomplished and against the insurer, we hold that the dividend in the instant case should have been applied "to the purchase of paid-up additions," and not "paid in cash," and that under section 14 the value of the paid-up addition should have been "used to increase the term of extension." We therefore hold that the judge properly overruled the general demurrer.

*Judgment affirmed. MacIntyre, J., and Guerry, J., concur. Broyles, C. J., disqualified.*