28817, 28818. PENN MUTUAL LIFE INSURANCE CO. *v.* CHILDS; and *vice versa.*

Decided June 20, 1941.   Rehearing denied July 24, 1941.

Alston, Foster, Moise & Sibley, James L. Alston, W. B. Spann, Jr., for plaintiff in error.

*Hirsch, Smith & Kilpatrick, D. F. McClatchey, W. B. Cody,* contra.

GARDNER, J. LeRoy W. Childs brought an action against the Penn Mutual Life Insurance Company to recover $481.38 as the aggregate of two payments under an ordinary life-insurance policy (No. 1254306) providing for total and permanent disability benefits in the sum of $240.69 monthly should the insured become disabled within the terms of the policy. The original policy, though surrendered for adjustment of liability to conform to correct age, was dated December 27, 1926, and insured the plaintiff against death in the original sum of $25,000. The policy as reissued provided for liability against death in the sum of $24,069, and for benefits in the sum of $240.69 monthly in the event of total and permanent disability within the terms of the policy, and required an annual premium of $943.26, inclusive of $84 as the proportionate consideration for the disability benefit provisions. The policy provided an option to the insured to discontinue at any time the disability provisions, when the annual premiums would become reduced proportionately.

The provisions as to disability benefits were as follows: "Disability Benefits. The company agrees to pay a monthly income of $240.69 and waive payment of subsequent premiums upon receipt of due proof that the insured has become totally and permanently disabled before the policy anniversary on which the age of the insured at nearest birthday is sixty years, as provided in section 4." "The annual premium stated above includes eighty-four and 00 dollars as provided in section 4." "All the benefits, privileges and provisions stated on the second and third pages hereof [the insurer's signature appearing on page one] form a part of this policy as fully as though recited at length over the signatures hereto attached."

"SECTION 4. TOTAL AND PERMANENT DISABILITY BENEFITS; WAIVER OF PREMIUM AND MONTHLY INCOME PAYMENT. [unquoted]"

"NO REDUCTION FOR BENEFITS GRANTED. [unquoted]"

"PARTICIPATION. [unquoted]"

"INCREASING VALUES. [unquoted]"

"TOTAL AND PERMANENT DISABILITY. Disability

shall be total and permanent if the insured is, upon the receipt of due proof, totally and permanently prevented by bodily injury or disease from engaging in any occupation whatever for remuneration or profit and become so disabled while this policy was in force by payment of premium. Immediately upon receipt of due proof of such total and permanent disability, the benefits shall become effective, subject to the conditions herein provided. If said total disability has been continuous for not less than three consecutive months immediately preceding the receipt of due proof, such disability, if not already approved as permanent, shall nevertheless be deemed to be permanent and upon the receipt of due proof of such disability the benefits shall become effective, subject to the conditions herein provided."

"RECOGNIZED DISABILITIES. [unquoted]"

"RECOVERY FROM DISABILITY. [unquoted]"

"TERMINATION. This provision for total and permanent disability benefits shall automatically terminate: (1) Upon default in the payment of any premium; (2) If this Policy be surrendered for its cash value, or if any paid-up insurance or extended insurance provided for in section 3 of this policy become effective; (3) Upon the policy anniversary on which the age of the insured at nearest birthday is sixty years; (4) If the insured engage in military or naval service in time of war; (5) If the disability of the insured result from aeronautic or submarine casualty; (6) If the disability of the insured be voluntarily self-inflicted. . ."

On incontestability of the policy the following appears: "Incontestability. This policy and the application therefor, a copy of which is attached hereto, constitute the entire contract between the parties. This policy shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue except for non-payment of premiums and except as to provisions relating to disability benefits. All statements made by the insured or on his behalf shall, in the absence of fraud, be deemed representations and not warranties and no such statement shall avoid or be used in defense under this policy unless it is contained in the written and printed application and a copy of such application is attached to this policy when issued."

The plaintiff alleged that "on or about March 31, 1939," he became "disabled within the meaning of said contract of insurance

in that he became disabled as a result" of generalized arteriosclerosis, coronary sclerosis, angina pectoris, ventricular hypertrophy, sinus arythmia, impaired hearing in the left ear, hyperthrophic arthritis of the thoracic vertebrae, sciatica of the left sacro-iliac joint, and myocardial fibrosis; and that as a result of said diseases the plaintiff had been totally and permanently disabled within the meaning of the contract, and that he had been unable to continue his practice as a physician and surgeon as he had prior to April 1, 1939.

The defendant defended on two grounds, (1) that the policy was void ab initio as to the disability benefits because the uncontradicted evidence established that the plaintiff was knowingly guilty of making false statements, misrepresentations and wilful concealments material to the risk in applying for and obtaining the policy, and that the answers in reply to questions in the written application attached to the policy were not full, complete and true, and were knowingly false, and were of such a variation from the truth as to change or enhance the nature, extent and character of the risk as contemplated in the policy issued to the plaintiff; and (2) that the plaintiff was not totally and permanently disabled within the terms of the policy even though in law and fact there had been no fraud in procurement of the policy avoiding it.

Upon the call of the case for trial the plaintiff moved to strike from the defendant's answer the defense based upon the alleged fraud in the procurement of the policy, and predicated the motion on that part of the incontestable clause as follows: "The policy shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue, except for non-payment of premiums and except as to provisions relating to disability benefits." The court overruled the motion, holding that the defense of fraud in the procurement of the policy was not barred by the language of the incontestable clause. To this judgment the plaintiff excepted pendente lite.

The trial proceeded to verdict and judgment for the plaintiff for the sum of $438.38, and interest. The insurer moved for a new trial, which motion the court denied.

The case is before this court on a main bill of exceptions in which the insurance company assigns error on the order of the court overruling its motion for new trial; and on a cross-bill in which the

insured excepts to the judgment overruling his motion to strike the plea of the defendant of fraud in the procurement of the policy. On the main bill, assignments of error were on the usual general grounds and several special grounds, which will be set forth for discussion and determination as needed.

The primary questions presented are, (1) whether as restricted to the provisions relating to total and permanent disability benefits the incontestable clause precluded the defense of fraud in the procurement of the policy as might bar recovery under these provisions, and (2) whether the evidence authorized the verdict. The other questions are secondary.

■ Originally, the so-called incontestable clause was largely a product of necessity. The success with which the insurers had often been able to defeat recoveries many years after the policies had been issued, on the ground of fraud in their procurement, had created a general impression with the public, notwithstanding the good faith of the companies, that "a contract of life insurance was a one-sided affair and was simply a scheme on the part of designing individuals and corporations to secure to themselves the earnings of others under a supposed contract for the benefit of some one in whom the insured was interested, but who was never really benefited by the contract. This prevailing impression interfered to a great degree with the whole business of life insurance . . and was calculated to make people, as a rule, indisposed to enter into contracts of life insurance. The consequence was that the insurers, in order to increase their business, and to induce those who, on account of their observation in regard to cases where life-insurance policies had been declared void after the death of the insured and after all premiums had been paid, were uneasy about the result which might be reached in case they insured their lives, were compelled to offer to the public a contract which would, to a large extent, remove these objections which had become so well settled in the public mind." *Massachusetts Benefit Life Association* v. *Robinson,* 104 *Ga.* 256, 270 (30 S. E. 918, 42 L. R. A. 261). This necessity was met by the incorporation of the incontestable clause. While the advent of the clause was prompted primarily to stay the defense of fraud in procurement of the policy, the clause, being itself a product of contract, was not necessarily so restricted. Many sales advantages also arose in offering contracts which, *after*

certain dates, would be free of all defenses upon the happening of contingencies insured against, save only as exceptions were reserved in the clause. In many contracts the insurers, in many instances waiving the benefits of statutes, precluded themselves by the incontestable clauses to contests against death by suicide, or at the hands of justice, either punitive or preventive (*Murphy* v. *Metropolitan Life Insurance Co.*, 152 *Ga.* 393, 110 S. E. 178; *Davis* v. *Metropolitan Life Insurance Co.*, 48 *Ga. App.* 179, 182, 172 S. E. 467), and in other instances, precluded themselves against death or injuries *(when proper exceptions are not made to the incontestable clauses)* arising from riding in submarines or aeroplanes or service in the army or navy. Obviously, the incontestable clauses do not relate alone to the questions of initial voidability of the contracts, but extend forward in force over the span of the contracts barring contests save only as exceptions have been preserved. "The application of a provision for incontestability is not limited to contests as to the initial validity or voidability of a policy but extends also to defenses based upon a subsequent breach of its terms." Penn Mutual Life Insurance Co. *v.* Kelly, 88 N. H. 351 (189 Atl. 345). It was so held in *Massachusetts Benefit Life Asso.* v. *Robinson*, supra, and that the interpretation was well known to the insurer and insured alike. The court said (page 278): "There can be no doubt that the interpretation which is placed upon every policy of the character of the one under consideration by the holder is, that after the lapse of the period fixed, the policy is to be free from defenses. It can be asserted with equal confidence that the fact that the holder in each case so understands is well known to the insurer."

■ The disability benefit provisions, or references thereto, were spread over the three pages of the policy; the signature of the insurer appeared at the bottom of the first page. On the first page appeared the provision: "All the benefits, privileges and provisions stated on the second and third pages hereof form a part of this policy as fully as though recited at length over the signature hereto attached." It follows that the defendant was treating the entire policy as a unit, notwithstanding it was providing severally insurance against death, disability, etc., and was giving the insured (not the insurer) the option to discontinue at any time the disability features with corresponding reduction of the premiums.

The qualification of the incontestable clause was necessarily that of the entire policy.

■ The primary requirements of construction of the incontestable clause in question, *inclusive of its excepting phrases,* are that the clause must be construed with the policy as a whole, and the plain and manifest interpretation must be given as comports with the wording of the clause as will give force and effect to each and every provision of the policy according to the manifest intention of the parties at the time of the execution of the contract. Code, §§ 20-702, 56-815; *Ætna Life Insurance Co.* v. *Padgett,* 49 *Ga. App.* 666, 669 (176 S. E. 702), and cit; *Cato* v. *Ætna Life Insurance Co.,* 164 *Ga.* 392, 398 (138 S. E. 787); *Wheeler* v. *Fidelity & Casualty Co.,* 129 *Ga.* 237, 239 (58 S. E. 709); *Dorsey* v. *Rankin,* 43 *Ga. App.* 12 (157 S. E. 876). This cardinal rule of construction must be so applied even though the clause, in the absence of express wording, may be broad enough to suggest, impliedly, a construction not *required* by the literal wording of the clause. This requirement springs, not from the "most favorable construction" rule, but from the clearness of the wording, barring any interpretation less clear.

On the other hand, if the language of the clause, inclusive of the excepting phrases, may readily yield to two or more constructions, that interpretation must be given as will be most favorable to the insured to uphold the policy and provide the benefits for which the very end or existence of the contract was intended. *Ætna Life Insurance Co.* v. *Padgett,* supra, and cit. Further, if the meaning of the clause is ambiguous, yielding to doubtful or conflicting interpretations, then that construction must be made which will resolve the doubt or conflict in favor of the insured to uphold the contract and provide the benefits intended under the contract. *Benevolent Burial Association Inc.* v. *Harrison,* 181 *Ga.* 230, 239 (181 S. E. 829); *Ætna Life Insurance Co.* v. *Padgett,* supra, and cit.; *Union Central Life Insurance Co.* v. *Allan,* 54 *Ga. App.* 151, 157 (187 S. E. 178). "Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice." *Johnson* v. *Mutual Life Insurance Co.,* 154 *Ga.*

653 (2) (115 S. E. 14), and cit.; *Columbia Casualty Co.* v. *Rogers Co.,* 157 *Ga.* 158, 160 (121 S. E. 224).

■ Generally incontestable clauses are valid and render contracts of insurance incontestable, precluding all defenses, inclusive of fraud, save as they may come within clear exceptions. The authorities in this and other jurisdictions are numerous to this effect. L. R. A. 1917E, 339; 29 Am. Jur. 674, § 881; 8 Couch on Insurance, 2952, § 2155. The courts are generally uniform in recognizing as valid and binding all exceptions that are *express,* inclusive of that of fraud in procurement of the policy (unless there be statutes to the contrary). L. R. A. 1917E, 342; 8 Couch on Insurance, 2952, § 2155. An express exception in the incontestable clause for fraud in procurement of the policy will be given force and effect according to its scope. *Northwestern Life Insurance Co.* v. *Montgomery,* 116 *Ga.* 799 (43 S. E. 79). L. R. A. 1917E, 342.

■ The phrase "except as to provisions relating to disability benefits" is not an *express* exception literally designating "fraud in the procurement of the policy" as a defense specifically preserved from the force of the clause. The question then is whether, in designating objectively the disability feature, the defense of fraud in procurement of the policy is included in the exception by *necessary implication.*

As to its issuance, the policy was a unit; it was based upon one application, which was attached to the policy. It provided for the lapse of a year before the incontestable clause should go into effect. It also provided that "all statements made by the insured or on his behalf, in the absence of fraud, be deemed representations and not warranties." We think that an insurance contract, being a contract which "from its nature affords an opportunity to one party to perpetrate a fraud upon another" *(Massachusetts Benefit Life Asso.* v. *Robinson,* supra) it was the duty of the defendant (limited by the provision above quoted that "all statements made by the insured or on his behalf shall, in the absence of fraud, be deemed representations and not warranties") to have investigated within the initial year fixed by the policy *(Pacific Mutual Life Insurance Co.* v. *Barfield,* 57 *Ga. App.* 43, 52, 194 S. E. 258) the acts, conduct, and representations of the insured; and if the "information which would show that the fraud had been perpetrated could have been, by the exercise of ordinary diligence, obtained, then the par-

ties are bound by their contract as to time [first year in the instant case], and after the lapse of that time, fraud is no longer a defense." *Massachusetts Benefit Life Asso.* v. *Robinson,* supra. As to the basic duty to investigate see *Reynolds & Hamby Estate Mortgage Co.* v. *Martin,* 116 *Ga.* 495, 502 (42 S. E. 796); *Cohron* v. *Woodland Hills Co.,* 164 *Ga.* 581 (3), 590 (139 S. E. 56). While the court in *Massachusetts Benefit Life Asso.* v. *Robinson,* supra, as above quoted, *was reviewing the question with reference to life insurance, we can see no reason why the principle should not apply also to all features of a contract, inclusive of disability features, where the contract was issued as a unit upon the single application of the insured.* Incidence and prevalence of fraud are well within the calculations of insurers; the waiver of fraud by failure to investigate would not be applicable to one feature of the contract and inapplicable to the other. The contract as a whole became "vitalized and enforceable by the negligence [or waiver] of the party who was the victim of the fraud." *Massachusetts Life Asso.* v. *Robinson,* supra. Accordingly, there can operate against this no "necessary" implication in the language used. At most the implication was only of doubtful inherence, when the interpretation would have to be resolved against the insurer who prepared the printed forms. *Wilcox* v. *Owens,* 64 *Ga.* 601 (2); *Hill* v. *John P. King Mfg. Co.,* 79 *Ga.* 105 (2 S. E. 445); *Moorefield* v. *Fidelity Mutual Life Insurance Co.,* 135 *Ga.* 186 (69 S. E. 119); *Johnson* v. *Mutual Life Insurance Co.,* 154 *Ga.* 653 (115 S. E. 14); *Benevolent Burial Asso.* v. *Harrison,* 181 *Ga.* 230, 239 (181 S. E. 829).

We think it was the intention of the parties at the time the contract was executed to exempt the entire contract, both life and disability features, from the defense of fraud in procurement of the policy after the year and from the date the incontestable clause became of force; to preserve the defense at all times of failure to pay premiums; and to preserve to the insurer as to the disability benefit feature all defenses save that of fraud in procurement of the policy; this we think is the proper application of the incontestable clause.

Supporting our conclusion we cite *Mutual Life Insurance Co.* v. *Childs,* 64 *Ga. App.* 658 (14 S. E. 2d, 165), where the court had under consideration a similar clause on the question whether the defense of fraud in procurement of the policy was available to the

insurer to defeat recovery of benefits arising under certain disability benefit provisions. We quote the clause under consideration in that case: "Except for non-payment of premium and except for the restrictions and provisions applying to the double indemnity and disability benefits as provided in sections 1 and 3 respectively, this policy shall be incontestable after one year from its date of issue unless the insured dies in such year, in which event it shall be incontestable after two years from its date of issue." The court held: "We find nothing in the provisions of the policies sued on which reserves to the insurance company the right to contest the validity of the policies on the ground of fraud or misrepresentations in their procurement. Sections 1 and 2 referred to in the incontestable clause do not contain anything with reference to this. This right not having been specifically reserved in the incontestable clause, or in sections 1 and 2 of the policies therein referred to, we think and so hold that the proper construction of this incontestable clause is that it precluded the defendant company from making any defense of fraud or material misrepresentations in the procurement of the policies sued on, where the time limit for contesting the policies had expired, as was true in this case."

On the cross-bill the exceptions are well taken. The court erred in overruling the motion of the insured to strike the plea of the insurance company of fraud in procurement of the policy to defeat recovery of benefits arising under the disability benefit provisions.

■ The remaining primary question presented is whether the verdict is supported by the evidence. After a careful review of the evidence, consisting of more than 200 pages, inclusive of that with reference to the plea of the defendant of fraud in procurement of the policy, we hold under the authority of *Cato* v. *Ætna Life Insurance Co.*, supra, and under that of the many later consistent rulings of this and the Supreme Court, and after resolving all conflicts and issues of fact in favor of the verdict *(Western & Atlantic Railroad* v. *Mathis,* 63 *Ga. App.* 172, 173, and cit., 10 S. E. 2d, 457), that the jury was authorized to find that total and permanent disability existed and to return its verdict for the recovery sought. They were authorized to find that, notwithstanding the plaintiff discontinued work in the absence of full, objective disability, he was nevertheless totally and permanently disabled when he retired under the advice of physicians that it was unsafe for him to con-

tinue work. *Cato* v. *Ætna Life Insurance Co.*, supra; *Mutual Life Insurance Co.* v. *Enecks*, 41 *Ga. App.* 644, 650 (154 S. E. 198); *Blackman* v. *Travelers Insurance Co.*, 49 *Ga. App.* 137 (2) (174 S. E. 384); *Metropolitan Life Insurance Co.* v. *Pack*, 49 *Ga. App.* 535 (176 S. E. 119). Moreover, as to this issue the finding of the jury was supported, though not demanded, when it appeared that the defendant had paid without protest three monthly disability claims. The insurer's medical director testified: "I didn't question his disability. . . As I understand it, the question of disability hasn't been raised. My medical department has never questioned that he is disabled, up to the time that I came down here. . . We had discontinued benefits for other reasons." Accordingly, grounds 1, 2, and 3 of the motion, and 4, 14, 15, and 16 of the amended motion, for new trial are without merit.

■ Grounds 5 to 11 inclusive, 13, and 18 to 26 inclusive, are interrelated to the issue of fraud in procurement of the policy. Under the ruling on this issue, above rendered, these assignments are without merit. Ground 12 of the motion is to the effect that the court erred in refusing to charge the jury the following timely written request: "I charge you if a party to a cause fails to produce an available witness to a material fact, you may conclude that if produced the testimony of such witness would have been adverse to such party's contentions." This assignment is incomplete in failing to show that the witness was not as accessible to the movant as to the opposite party. *Brothers* v. *Horne*, 140 *Ga.* 617 (3) (79 S. E. 468). Furthermore, the assignment is without merit, under the principle that a presumption can not arise "prejudicial to a party for his failure to introduce a witness, if the jury may be satisfied [as in the instant case] from the evidence before them that the party who had such witness accessible has nevertheless proved his claim." *Bank of Emanuel* v. *Smith*, 32 *Ga. App.* 606 (2) (124 S. E. 114). Ground 17 assigns error on the failure of the court to charge verbatim section 4 of the policy as to the question when disability should be total and permanent. It appears that this provision was clearly covered in substance in the charge to the jury on the subject. The court was not required to charge this contention verbatim. The assignment is without merit.

The judgment on the cross-bill of exceptions not being a final determination of the cause, and the evidence (notwithstanding the

error in submitting to the jury the issue as to fraud in procurement of the policy) being sufficient to support the verdict, the

*Judgment is affirmed on the main bill of exceptions, and reversed on the cross-bill.  Broyles, C. J., and McIntyre, J., concur.*