## A94A1250, A94A1251. BLUE CROSS & BLUE SHIELD OF GEORGIA, INC. v. SHEEHAN; and vice versa.

(450 SE2d 228)

Pope, Chief Judge.

Defendant Blue Cross & Blue Shield of Georgia, Inc. issued a health insurance policy to plaintiff Thomas J. Sheehan in May 1990. In his application for the policy, plaintiff provided false responses to several questions, denying that he had been diagnosed as HIV positive even though he had. Defendant insurer expressly reserved the right to require plaintiff to submit to physical tests and examinations; but it apparently chose not to exercise that right and no tests or exams were required. Plaintiff filed no claims under the policy until November 1992, at which time defendant investigated plaintiff and discovered the false statements on his application. Plaintiff's policy included a legislatively mandated incontestability clause: "Two years after this Contract is issued, no false statements which might have been in your application can be used to void the Contract. Also, after these same two years, no claim can be denied because of any false statement on your application." See OCGA § 33-29-3 (b) (2) (A). Nonetheless, in May 1993, three years after the effective date of the policy, defendant notified plaintiff that it was rescinding his policy.

Plaintiff then brought this action against defendant, seeking a declaratory judgment and damages for breach of contract. Defendant answered and asserted counterclaims for rescission and reformation,[1] later amending its pleadings to assert an independent fraud action (to recover claims already paid out) as an additional counterclaim. Both sides sought attorney fees as well. Plaintiff moved for summary judgment, and this motion was granted with respect to plaintiff's claims and defendant's counterclaims for rescission or reformation: the trial court ruled that the incontestability clause was applicable and determinative of these issues. The trial court denied summary judgment for plaintiff on defendant's independent fraud claim, however, ruling that because defendant was not technically contesting the validity of the policy in the independent fraud claim, the independent fraud claim was not precluded by the incontestability clause. The trial court also denied plaintiff summary judgment with respect to attorney fees (both plaintiff's right to attorney fees and defendant's right to attorney fees). In Case No. A94A1250, defendant appeals the trial court's determination that the policy could not be rescinded or reformed. In Case No. A94A1251, plaintiff cross-appeals the trial court's decision that defendant could maintain an independent fraud action to recover benefits paid to plaintiff, as well as the court's denial of summary

---

[1] Defendant also asserted a counterclaim based on unjust enrichment, but this counterclaim was dismissed and has been abandoned on appeal.

judgment with respect to attorney fees.

*Case No. A94A1250*

1. Defendant contends the incontestability clause should not apply to bar rescission or reformation based on plaintiff's allegedly fraudulent misrepresentations. As noted above, the General Assembly has mandated that all accident and sickness insurance policies contain a provision limiting the time in which insurers can contest the policy based on misstatements on the application: "After two years from the date of issue of this policy, no misstatements made by the applicant in the application for such policy shall be used to void the policy or to deny a claim." OCGA § 33-29-3 (b) (2) (A). Some jurisdictions explicitly except fraudulent misrepresentations from the applicability of their incontestability clause (see, e.g., N. J. Stat. Ann. § 17B:26-5),[2] but our legislature chose not to do so. We have long held that "incontestable clauses are valid and render contracts of insurance incontestable, precluding all defenses, *inclusive of fraud*, save as they may come within clear exceptions." (Emphasis supplied.) *Penn Mut. Life Ins. Co. v. Childs*, 65 Ga. App. 468, 476 (4) (16 SE2d 103) (1941). Accord *Equitable Life Assur. Society v. Gillam*, 195 Ga. 797 (1) (25 SE2d 686) (1943). Indeed, in *Childs* we stated that in Georgia "the advent of the clause was prompted primarily to stay the defense of fraud in procurement of the policy." 65 Ga. App. at 473 (1). The insurer has a duty to investigate the application before the expiration of the contestability period, see *Childs* at 476-477 (5-6); and if it does not investigate, it waives its right to contest the policy based on any fraud which was discoverable. Id.; see also *Riley v. Indus. Life &c. Ins. Co.*, 190 Ga. 891 (1, 2) (11 SE2d 20) (1940).

The insurer's inability to rescind the policy based on the applicant's fraud is contrary to traditional principles of contract law and may at first blush seem unjust. It becomes more understandable, however, if we focus on the behavior of the insurer rather than the insured, and remember that the purpose of the incontestability clause is not only to protect the expectations of insureds (an interest which admittedly would not be compelling in any case involving an alleged fraud on the part of an insured), but also to encourage the insurer to be diligent in performing its duty to investigate within a specified period, and to penalize it if it does not. See generally *Incontestability Clauses in Georgia Insurance Contracts*, 13 Ga. L. Rev. 850, 862

---

[2] N. J. Stat. Ann. § 17B:26-5 requires all health insurance policies to include one of two alternative provisions, one of which states that "[a]fter 2 years from the date of issue of this policy no misstatements, *except fraudulent misstatements*, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim."

(1979).

In this case, defendant insurer had the right to require plaintiff to take a blood test and could have easily done so. If it had, it would have discovered plaintiff's HIV status. It did not, however, and the incontestability clause now precludes it from contesting the validity of the policy based on plaintiff's fraudulent misrepresentations.

2. Defendant points out that most of the cases on incontestability involve life insurance, and asserts that incontestability clauses in the context of health insurance should be treated differently. Specifically, defendant suggests that because an insurer expects any fraud in a health insurance application to be revealed by the claims the insured will file during the incontestability period, it should not have a duty to investigate a health insurance applicant until or unless any claims are filed. Yet several of the cited cases involve disability benefits, which are similar to health insurance benefits in the sense that ongoing claims are possible if not expected (and in the sense that claims within the contestability period may be expected if the applicant intentionally misrepresented his condition). See, e.g., *Gillam,* 195 Ga. at 797; *Childs,* 65 Ga. App. at 468. Moreover, the language in *Childs* speaks of insurance contracts generally, and we see nothing in the statutes or case law to indicate that incontestability clauses in health insurance policies should be treated differently from those in other insurance policies. See also *Keaten v. Paul Revere Life Ins. Co.,* 648 F2d 299, 302 (5th Cir. 1981) (applying Georgia law). ("We believe that the Georgia legislature and judiciary fully intend to presently treat the question of incontestability the same regardless of the type of policy issued.") Accordingly, defendant's argument that health insurance policies should be treated differently is without merit.

3. Defendant further argues that the running of the two-year period of contestability was "tolled" by plaintiff's fraudulent misrepresentations on the application and subsequent failure to file claims for more than two years. See OCGA § 9-3-96. As we held in Division 1, incontestability clauses are meant to cover defenses based on fraud, and this purpose would be undermined by applying OCGA § 9-3-96 in this type of case. Even if the tolling provision of that statute was otherwise applicable, however, we would reach the same conclusion we reached in Division 1 with respect to defendant's right to rely on the tolling provision: defendant breached its duty to investigate the application when it failed to exercise its right to require a blood test, and therefore waived its right to rely on any fraud which would have been discoverable through such a test. Compare *Unity Mut. Life Ins. Co. v. Moses,* 621 FSupp. 13 (E.D. Pa.), aff'd 780 F2d 1017 (3d Cir. 1985) (incontestability clause did not preclude insurer from rescinding policy where insured not only made fraudulent representations on application but then, when insurer investigated, fraudulently

posed as independent verifier of his health). Contrary to defendant's assertion, there is no evidence of any post-application fraud to keep defendant from discovering plaintiff's condition in this case.[3] Instead, there was simply no effort on defendant's part to investigate and discover anything. The insurer does not have the right to sit back and wait for claims to come in before it initiates any investigation; and if it does wait, it runs the risk that it will not discover a fraud until it is too late to do anything about it.

*Case No. A94A1251*

4. On cross-appeal, plaintiff argues that the trial court erred in denying his motion for summary judgment on defendant's counterclaim for fraud. We agree. The trial court relied on *Guarantee Trust Life Ins. Co. v. Wood*, 631 FSupp. 15 (N.D. Ga. 1984), in which a federal district court ruled that because an independent fraud action technically involves affirmance of the contract rather than a contest of it, such an action should not be barred by an incontestability clause. We are not persuaded that this technical, conceptual distinction should be determinative, however. Instead, we agree with the reasoning in *Bankers Security Life Ins. Society v. Kane*, 885 F2d 820 (11th Cir. 1989),[4] a subsequent Eleventh Circuit case: an insurer precluded from contesting the validity of a policy by an incontestability clause cannot bring a separate tort action for fraud where such a suit "would merely provide a different means to challenge the validity of the insurance contract," which is exactly what the incontestability clause was meant to prevent. See 885 F2d at 822. See also *Lindsay v. United States Life Ins. Co.*, 194 A2d 31, 34 (N.J. Super. 1963) (holding insurer's counterclaim for indemnification for fraud must be barred by incontestability clause or insurer would be able to do indirectly what it could not do directly: "If it has contracted away its right to defend, it can retain no right to attack"). We understand the temptation to allow such an action as a compromise, to avoid the seemingly unjust result that the insured may recover despite his fraud. Nonetheless, that is the result the legislature has mandated by requiring incontestability clauses in insurance contracts, and we can-

---

[3] There is no suggestion that plaintiff took any affirmative post-application actions to cover up his condition; defendant can only point to plaintiff's failure to file any claims during the contestability period. Plaintiff was not obligated to file claims, however, even if he had them. And the record suggests he had no claims prior to November 1992, as he received AZT for free, his medical bills were "minimal," and he had a $1,000 deductible.

[4] Neither *Wood*, a life insurance case from Georgia, nor *Kane*, a life insurance case from Florida, involved the exact statute or incontestability clause at issue here. Both involved statutes and clauses substantially similar to this one, however, and both states have treated incontestability clauses in a similar manner.

not allow an insurer to circumvent that mandate simply by reframing and renaming his argument.

5. Based on our disposition of defendant's fraud claim in Division 4, it follows that defendant is not entitled to attorney fees. Thus, summary judgment should have been granted for plaintiff on this issue as well.

6. However, the trial court's denial of plaintiff's motion for summary judgment on his own entitlement to attorney fees was correct. While we have rejected defendant's contention that incontestability clauses in health insurance policies should be treated differently from those in other policies, it is nonetheless true that we have never actually construed the exact provision at issue in this case. We therefore agree with the trial court that defendant's defense was not in bad faith or totally without legal basis, and that an award of attorney fees for plaintiff is not warranted. See *Gillam*, 195 Ga. at 805-807 (2); OCGA § 33-4-6.

*Judgment in Case No. A94A1250 is affirmed. Judgment in Case No. A94A1251 is affirmed in part and reversed in part. McMurray, P. J., and Smith J., concur.*

DECIDED OCTOBER 5, 1994 —
RECONSIDERATION DENIED NOVEMBER 16, 1994 — 

*Heyman & Sizemore, William H. Major, Michael R. Hurst, Kirkland A. McGhee, William B. Brown*, for appellant.
*J. Patrick McCrary, Harry H. Harkins, Jr.*, for appellee.