32929.   UNITED  NATIONAL  INSURANCE  COMPANY  *v.*
CODY, administratrix.

Decided  May 3, 1950.

528

530

*Gibson & DeLoache, Sam J. Gardner Jr., Joseph A. Whittle,* for plaintiff in error.

*Gowen, Conyers & Dickey,* contra.

GARDNER, J. This case is appealed to this court on the general grounds only, the question being (a) whether or not the evidence supports the verdict and judgment as to the finding that James Cody was insured under the policy sued upon at the time he was accidentally killed, and (b) that even if insured, whether the plaintiff is entitled to recover because "proof of loss" was not filed within 90 days from the date of James Cody's death.

The trial judge rendered a comprehensive opinion, which we will hereinbelow set out verbatim, in order to facilitate our findings. That opinion and judgment reads:

"This case was submitted to the court for determination without the intervention of a jury, upon an agreed statement of facts, supplemented by evidence on one point upon which the parties could not agree. Under this statement and the pleadings filed, it is admitted that on the 28th day of April, 1948, the defendant company issued to one, James Cody, a blanket group policy of insurance, insuring, for the term of three months thereafter, the employees of the said James Cody against 'personal bodily injuries effected solely through accidental means arising out of and in the course of their employment, and such infection as naturally and unavoidably resulted from such injury.' It also, by a rider attached thereto, insured the said James Cody himself 'for full time coverage' under said policy, reciting that the said James Cody was 'entitled to all benefits thereunder.'

"The application for this insurance, signed by Cody and made a part of the policy, stipulates that the 'initial rate for the first quarter' is to be 2.4% that the 'rate per quarter thereafter is to be 2%; basis of pay roll $2600.00 per quarter.' Then follow these questions and answers: 'Is any person not appearing on the pay roll records to be insured hereunder? (A) Yes. If so, such person will be entitled to the maximum benefit under the policy for the flat extra ¼ premium of $15.00, and such persons, if any, are listed by the name and occupation below:

" 'Name: James Cody. Occupation: Owner and operator.'

"By the evidence of Dorothy Cody, it was established that, prior to July 14, 1948, which was the original expiration date of said policy, a 'reminder notice', partly in the form of a questionnaire, was received by the deceased from said company, in which he was instructed to complete said form and return it to the home office of the company immediately, together with his check or money order for the premium due on July 14, 1948. The questions propounded by this questionnaire were as follows:

"Number of employees listed..........................................

Total wages paid $.....................................................

2% of wages .............................................................

Extra premium (flat rate) .............................................

Total premium paid .....................................................

Date quarter ended ....................................................

Names of Employees:                    Wages paid:

_____                 _____

_____                 _____

_____                 _____

"In this questionnaire, the figure '2', immediately preceding the '%' mark, appearing in question three, was already filled in in typewriting when it was received by deceased, but the blank in question four, following the words 'extra premium (flat rate)' was not filled in.

"Cody completed the questionnaire as follows:

Number of employees listed.................8

Total wages paid ....................$1795.96

2% of wages .........................$35.92

Extra premium (flat rate) ....................

Total premium paid ___:_____$35.92

Date quarter ended _____June 30, 1948.

"He also listed the names of his employees and the amounts which each had earned during the previous quarter, and forwarded the same to the defendant company, together with his check for $35.92, representing 2% of the total amount of wages paid. These papers were received at the home office of the company at 2:15 p.m. on July 13, 1948. No letter apparently accompanied same, and nothing was said by the deceased about an extra $15.00 premium, nor whether he did or did not intend to allow his personal insurance to lapse, or whether he did or did not understand that the 2% which he enclosed represented the renewal premium on the policy in full. Nothing more was paid.

"The company accepted the $35.92 and did not communicate further with deceased concerning the premium due on the policy, and the policy remained in the form in which it was originally issued until the death of the deceased, which resulted from an accident arising out of and in the course of his business, on September 14, 1948. Notice of his death was given to the defendant company, request made for proper forms upon which to make formal proof of loss, and a denial made by the company of all liability therefor. Suit was then brought in an effort to collect the amount alleged to be due.

"An examination of the policy and the application made therefor, discloses further these facts:

"(1) There is no provision in either the application, the endorsement or the policy, which specifically says, in so many words, that another 'special premium of $15.00' shall be necessary to renew the insurance of James Cody individually.

"(2) The only language in the policy itself, dealing with the renewal of any of said insurance is the following:

"(a) 'This policy is renewable only at the option of the company', which appears in three places therein or thereon.

"(b) 'This insurance may be renewed at the option of the company, by the payment of the renewal premium on or in advance of expiration dates, from quarter to quarter, of 2% of the total pay roll of the employer', and

"(c) 'All endorsements and riders attached hereto, duly exe-

cuted by proper authority, are a part of this policy the same as if recited at length over the seal of, and signature for, the company'.

"Construing these provisions as best we can, and giving consideration to the facts agreed upon and proved, the court is of the opinion that James Cody was covered under this policy at the time of his death.

"This construction, we think, is sustained not only by the provisions of the policy set forth above, but by the acts and omissions of the defendant itself. If, as the defendant contends, this coverage could be renewed only by the payment of another $15.00 premium, is it not reasonable to suppose that the application, the policy or the endorsement, one or the other, would somewhere have contained a provision to that effect? Can we merely assume, in the absence of any such provision, that a like amount would necessarily be required to renew that coverage for another term? Such was not required in the case of the employees' coverage, for their premium was reduced at least from 2.4% to 2%. Upon what theory then could such an assumption be predicated, if, in fact, any assumption at all could be indulged in which would tend to work a forfeiture of the insurance?

"If an additional premium of $15.00 were due on July 14, 1948, is it not reasonable to assume that the company, in preparing the 'reminder notice' which it sent to the deceased, would have put that figure in the blank appearing in question four thereof as it did the figure '2' in question three? Would the defendant company, if deceased's premium remittance was actually $15.00 short, have accepted the same without a word of protest on its part? Would it not, in some way, have communicated to him its dissastisfaction with said remittance, if any existed? Would it not, at least, have given him notice that, because of his failure to include the additional $15.00 premium, his personal insurance had been, or would be, lapsed? None of these, it did. No further demands were made upon deceased; no new policy was written to supplant the old; no rider was issued to be attached thereto, and no endorsement made upon the original policy, showing that, in the future, its coverage would would be limited to employees only. Indeed, so far as the

record discloses, no request was ever made for the return of the policy that such an endorsement might be made thereon. Instead, upon receipt of the 2%, the company permitted the policy, without objection on its part, to remain in the exact form in which it was originally written until after the death of deceased. Would not these actions on the part of the company, and these omissions, at least estop it now from claiming that the policy was not in force with respect to the personal insurance of the deceased?

"That the deceased wanted this additional insurance is clearly evidenced by the fact that he made application for it. It had been in force less than three months, and nothing in the meantime had been said by him which would authorize the company to believe that he did not wish to continue with it. It had not been renewed before; consequently deceased did not know, from previous experience, just what the requirements of the company were with respect to renewal premiums. In this, he had only the policy itself to guide him. And the policy itself does not, in any place, say that the payment of an additional $15.00 premium shall be necessary to renew this coverage. The only policy reference to the renewal cost of any of said insurance is the reference referred to in # 2-b above, which reads as follows: 'This insurance may be renewed at the option of the company by the payment of the renewal premium on or in advance of expiration dates, from quarter to quarter, of 2% of the total pay roll of the employer'. Apparently, deceased did what he understood to be required. He sent in the 2%. If this was not sufficient, did not the company owe him the duty of at least calling his attention to such deficiency? We think it did, and the fact that it did not do so, and did not do any of those other things which an insurance company might reasonably be expected to do if a deficiency in the premium remittance actually existed, sustains, we think, the position that the additional premium was not a requisite to a renewal of his coverage under the contract as it is written.

"The court further finds that neither a failure to give 'immediate notice' of the death of the deceased, nor a failure to furnish affirmative proofs of loss within ninety days thereafter,

would preclude a recovery under the policy since the policy itself provides for no penalty for either of such failures.

"In view of the fact, however, that defendant denies receiving any notice of the death of the deceased prior to counsel's letter of January 4, 1949, and the further fact that there is no dispute about the affirmative proofs of loss not having been made within ninety days as the policy provides, the court is of the opinion that the failure of the company to pay this claim does not evince such bad faith upon its part as to authorize the plaintiff to recover either the stipulated penalty or counsel fees.

"It is therefore ordered, adjudged and decreed that the plaintiff do have and recover of and from the defendant, United National Insurance Company, the sum of twenty seven hundred fifty dollars ($2750.00), together with interest thereon at 7% per annum, from September 14, 1948, and the further sum of $31.45 costs of court.

"Granted in open court, this the 26th day of October, 1949. (Signed) W. C. Little, Judge, City Court of Brunswick."

(a) As to whether or not the policy on the life of the deceased was of force at the time of his death, able counsel for the defendant contend that the $15 paid covering the life of the deceased, as reflected by the endorsement on the policy, which became a part of the policy, was not covered by the second quarterly payment of the insurance policy, but that another $15 should have accompanied that premium, in order to renew the endorsement, and that the endorsement automatically expired at the end of the three months after its issuance unless the same was renewed at the option of the company and the insured. The policy provided as to renewal premiums: "This insurance may be renewed at the option of the company, *by the payment of the renewal premiums on or in advance of expiration dates, from quarter to quarter of 2 per cent. of the total payroll of the employer.*" (Italics ours.) The endorsement reads:

"*Attached to and forming a part of policy G-2731 issued to James Cody.* [Policy No. G-2731, the policy. This endorsement becoming a part thereof]

"In consideration of an additional premium of $15.00 included in the premium stipulated in the face of this policy, and paid concurrently with and under the same terms and conditions

as the premium of the said policy, it is specifically understood that the employer himself, James Cody, is insured under this policy for full-time coverage and is therefore entitled to all the benefits thereunder. [Italics ours.]"

It seems that, under the terms of the policy, the policy expired exactly three months from the date of issuance thereof; that the endorsement, by the language quoted above, was a part of the policy; that the record shows the reminder notice of renewal was sent to the insured; that the premium as requested on June 30, 1948, was paid; that no protest of the amount of the premium received was made by the defendant. It would seem therefore, that the premium was paid in due time, and since the check in payment thereof was cashed and no protest made by the defendant until after the death of the deceased, the deceased was lulled into a sense of security in regard to his insurance, and the defendant by laches, if not otherwise, lost the chance to collect an additional premium. Counsel for the defendant argue that payment of a premium is a condition precedent to renewing coverage, and cite in support of this theory the cases of *Bankers Health & Life Ins. Co.* v. *Crozier*, 65 *Ga. App.* 329, 331 (16 S. E. 2d, 65), and *Illinois Life Ins. Co.* v. *McKay*, 6 *Ga. App.* 285 (64 S. E. 1131). This is a good principle of law, but not applicable under the facts of the instant case. In the first case cited, the policy of insurance had been cashed in, it is true without the knowledge of the beneficiary, but until the death of the deceased the contract was between him and the insurance company, not between the insurance company and the beneficiary, and although she continued to send money to the insured to pay the premiums, there was sufficient evidence to show that they were not paid, particularly in view of the fact that the beneficiary himself cashed in the policy. And the second case cited shows under its facts that the premium payment was mailed on a certain day, was due in a city 1000 miles away the next day, did not reach the addressee until one day after the payment date, and therefore the policy lapsed. These are not the facts in the case before us. Another case cited by counsel for the defendant to the same effect is *Smith* v. *New York Life Ins. Co.*, 65 *Ga. App.* 451, (15 S. E. 2d, 813), but in that case although earned dividends were to be applied as pre-

miums, it appears that the earned dividends did not cover the whole premium and there was no offer to pay the difference, the court held that the company was not estopped to plead the forfeiture. The case of *Metropolitan Life Ins. Co.* v. *Smith,* 48 *Ga. App.* 245 (172 S. E. 654), also turned on the matter of applying dividends to the payment of premiums, and is not on all fours with the facts in the case at bar.

We have given hereinabove the endorsement, which became a part of the policy, and also have quoted that part of the policy which concerns premium rates. It is possible that the wording of the policy is ambiguous, but if so, that phase of law has been definitely decided by the appellate courts in many instances.

In the case of *Penn Mutual Life Ins. Co.* v. *Childs,* 65 *Ga. App.* 468 (3) (16 S. E. 2d, 103), this court said: "If the clause is ambiguous, or of doubtful or dual interpretation, that construction must be given which will be most favorable to the insured and provide the benefits intended under the contract."

See also to the same effect, *Insurance Company of North America* v. *Samuels,* 31 *Ga. App.* 258 (120 S. E. 444), which reads: "If a policy of insurance is capable of being construed in different ways, that interpretation must be placed upon it which is most favorable to the insured. *Massachusetts Benefit Life Asso.* v. *Robinson,* 104 *Ga.* 256 (2) (30 S. E. 918, 42 L. R. A. 261). An exception in a policy of insurance is to be taken most strongly against the insurer. *Empire Life Insurance Co.* v. *Einstein,* 12 *Ga. App.* 380 (4) (77 S. E. 209)."

"Policies of insurance are to be liberally construed in favor of the object to be accomplished. The terms used and any ambiguities in an insurance contract will be construed against the insurer who prepared and proposed the contract. If provisions in a policy conflict, that construction will be given which is most favorable to the insured. *Hall* v. *Royal Fraternal Union,* 130 *Ga.* 820, 835 (61 S. E. 977); *Ogletree* v. *Hutchinson,* 126 *Ga.* 454 (55 S. E. 179); *Massachusetts Benefit Life Association* v. *Robinson,* 104 *Ga.* 256 (30 S. E. 918, 42 L. R. A. 261); *Arnold* v. *Empire Mutual Annuity & Life Ins. Co.,* 3 *Ga. App.* 685, 695 (60 S. E. 470); *Perkins* v. *Empire Life Ins. Co.,* 17 *Ga. App.* 658 (87 S. E. 1094)." *Eminent Household of Columbian Woodmen* v. *Vance,* 53 *Ga. App.* 237 (185 S. E. 391).

" 'If one provision of a policy is absolutely repugnant to another provision, the one most advantageous to the insured will be enforced, while the other provision will be ignored.' Under this ruling and the pleadings in the instant case, the answer of the defendant failed to set forth a legal defense, and the court properly sustained a demurrer thereto." *Inter-Ocean Casualty Co.* v. *Alford,* 50 *Ga. App.* 260 (177 S. E. 816).

"In determining whether, under the terms of the contract of insurance, the policy had lapsed at the time of the accident in question, there being conflict in its provisions as to when the insurance became of force, the provisions most favorable to the insured must control; and, it being provided in the application of the insured, which by the terms of the policy was made a part of the contract, that the insurance should not take effect until the delivery of the policy to the insured, and it appearing from the evidence, without contradiction, that the policy was not delivered until April 4, 1921, it must be held that the insurance ran from that date, although the policy stated that it ran from March 28, 1921, the date of the policy." *Parham* v. *National Relief Assur. Co.,* 33 *Ga. App.* 59 (125 S. E. 519).

"Where an insurance policy is fairly susceptible of two or more different but sensible and reasonable constructions, the one will be adopted which, if consistent with the objects of the insurance, is most favorable to the insured. 'In other words, a contract of insurance couched in language chosen by the insurer is, if open to the construction contended for by the insured, to be construed most strongly, or strictly, against the insurer and liberally in favor of the contention of the insured.' " *Fokes* v. *Interstate Life & Accident Ins. Co.,* 59 *Ga. App.* 680 (2 S. E. 2d, 170).

"If the policy is reasonably susceptible of more than one construction, the interpretation favorable to the insured should be given effect, and, if inconsistent clauses appear in the body of the policy, the one most favorable to the insured will be adopted, and where the contract is ambiguous the doubt should be resolved against the insurer. See *Aetna Life Insurance Co.* v. *Padgett,* 49 *Ga. App.* 666 (176 S. E. 702), and citations." *Hart* v. *Metropolitan Cas. Ins. Co.,* 76 *Ga. App.* 474, 476 (46 S. E. 2d, 361).

"An indorsement upon an insurance policy, susceptible of two constructions, will be construed most strongly against the insurer." *Insurance Company of North America* v. *DeLoach*, 3 *Ga. App.* 807 (2) (61 S. E. 406).

"If the insurance policy is so framed that its language is calculated to mislead, the courts lean to a construction that will not permit the insurance company to take advantage thereof." *Commonwealth Casualty Co.* v. *Asheimer*, 18 Fed. (2nd) 879 (4), and cases therein cited.

We therefore hold that under the facts of this case the company accepted the premium, renewed the policy without protest, and can not after the death of the deceased be heard to claim that all the premium was not paid on the policy.

(b) We now come to the proposition as to whether or not "proof of loss" was filed within 90 days, or was waived by the company. As to this phase of the case, the policy provides: "Affirmative proof of loss must be furnished to the company within 90 days after the commencement of the period for which the company is liable, and in case of claim for any other loss, within 90 days from date of such loss." The deceased died September 14, 1948. On October 5, 1948, less than 30 days from the time of the death of the deceased, H. O. Norton whom the record shows signed certain documents as "Authorized Agent" for the defendant, called on the plaintiff, and, as alleged in the amended petition as quoted hereinabove, told the plaintiff that he would assist her in collecting the sums due her under the policy. The record shows that this agent presented certain papers to the plaintiff to sign, but did not suggest that she sign any papers concerning proof of loss. Nor did the defendant send any such papers to the plaintiff after having been notified by the agent that the insured had died. Certainly the defendant company was put on notice that the deceased had died, as evidenced by the company's agent securing a policy on the life of the plaintiff, and also by the fact that the said agent notified the plaintiff that the defendant had refused payment on the policy insuring the deceased. The defendant submitted no evidence that the agent did not so report to the plaintiff.

In *Brown* v. *N. Y. L. Ins. Co.*, 54 *Ga. App.* 471, relied on by counsel for the defendant, no resemblance to proof of loss was giv-

en, because of the insanity of the insured (no other person having known of the existence of the policy), and there was no type of waiver made by the company. These are not the facts in the case before us. The facts in *Dean* v. *Northwestern Mutual Life Ins. Co.*, 175 *Ga.* 321 (165 S. E. 235), also concerned non-payment of premiums for an insane person, and non-waiver on the part of the insurance company.

In *Pooser* v. *Norwich Union Fire Ins. Soc.*, 51 *Ga. App.* 962 (4) (182 S. E. 44), this court stated that in a policy contract which provided no penalty on failure to furnish proof of loss within a specified time, does not necessarily render proceeds of the policy unrecoverable because of delay beyond the specified time. This same principle was involved in the case of *Peoples Loan & Savings Co.* v. *Fidelity & Casualty Co.*, 39 *Ga. App.* 337 (147 S. E. 171), and was decided adversely to the contentions of the defendant.

There are numerous decisions to the effect that absolute refusal by an insurance carrier to pay the insured constitutes a waiver of the right of the insurer to insist upon compliance with proof of loss provisions of a policy. See, in this connection, *Patrick* v. *Travelers Ins. Co.*, 51 *Ga. App.* 253, 255 (180 S. E. 141); *Harp* v. *Fireman's Fund Ins. Co.*, 130 *Ga.* 726, 730 (61 S. E. 704); *Travelers Ins. Co.* v. *Sanders*, 47 *Ga. App.* 327 (170 S. E. 387); *Travelers Ins. Co.* v. *Pittman*, 51 *Ga. App.* 401 (180 S. E. 650); *Prudential Ins. Co.* v. *Calloway*, 54 *Ga. App.* 864 (189 S. E. 545); *National Life Ins. Co.* v. *Jackson*, 18 *Ga. App.* 494 (89 S. E. 633).

It therefore appears from the record in this case, as submitted to this court, that the authorized agent of the company secured information from the proper representative of the deceased; that such agent did not submit proof of loss blanks, did not suggest that such were necessary; that he reported the facts of the death to the company (this being undisputed); that the defendant did not, even at this time, which was within the time that proof of loss could have been submitted, ask for such proof, but through the same authorized agent, sent word back to the representative of the deceased that the defendant would not pay the loss; that the policy does not contain any provision that proof of loss should be in writing; that no evidence was offered

to show any lack of authority in the authorized agent Norton; and further, that the policy does not contain any provision that would make failure to furnish proof of loss a ground upon which to void the policy or to refuse payment thereon.

In view of the whole record, we are constrained to hold that the best interests of justice are served by adhering to the judgment of the lower court in every respect, as reflected by the decision of the judge, acting as judge and jury, and affirming that opinion and judgment.

*Judgment affirmed. MacIntyre, P.J., and Townsend, J., concur.*