**B. L. IVEY CONSTRUCTION COMPANY and Marietta Investors, Inc., d/b/a Overbrook Forest Apartments**

v.

**PILOT FIRE AND CASUALTY COMPANY.**

Civ. A. No. 10705.

United States District Court
N. D. Georgia,
Atlanta Division.

Dec. 23, 1968.

Huie & Harland, Atlanta, Ga., for plaintiffs.

Bryan, Carter, Ansley & Smith, Sam Lowe, Jr., Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

In this action on an insurance policy both the plaintiffs and the defendant have asked the court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein the court grants plaintiffs' motion and denies that of defendant.

■ Under the terms of Rule 56, supra, summary judgment can only be granted where there is "no genuine issue as to any material fact" and the decision is one of law. On a motion for summary judgment this court is precluded from trying issues of fact.

■ The court has found, after a thorough study of the record, that there is "no genuine issue as to any material fact." See Georgia, Sou. & Fla. Ry. Co. v. United States Cas. Co., 177 F.Supp. 751 (M.D.Ga., 1959). In so ruling, the court has given defendants the benefit of all reasonable doubts in determining whether a genuine issue of fact exists. Heyward v. Public Housing Administration, 238 F.2d 689, 696 (5th Cir., 1956). The court has extended no inferences to the plaintiffs in ruling on plaintiffs' motion. See, generally, 6 Moore, Federal Practice (2d ed.), ¶ 56.04.

In arriving at the decision to grant summary judgment, the court has recognized, with the Fifth Circuit, that this procedure

"* * * (I)s not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists." Whitaker v. Coleman, 115 F.2d 305, 307 (5th Cir., 1940).

Marietta Investors, Inc., one of the plaintiffs in this action, is a corporation which acquires apartment land and develops apartments. Its president is William W. McNeal, who, in addition, is a minority stockholder in the company.

In early October, 1965, Marietta Investors desired insurance coverage on six dwellings under construction through the McNeal-Kennesaw Insurance Agency, d/b/a McNeal Insurance Associates. William W. McNeal is also president of this insurance agency, as well as its sole owner.

McNeal Insurance Associates represented several insurance companies, including Pilot Fire & Casualty Company, the defendant in this action.

At Mr. McNeal's instance, his insurance secretary at McNeal Insurance Associates, Miss Dorothy Cooper (now Mrs. Dorothy Cooper Lindsay), contracted Mr. J. Dow Covey, an agency supervisor with Pilot Fire & Casualty Company, concerning coverage. It is crystal clear from the depositions that Covey was the guiding hand in making the application for coverage. Mr. Covey brought the special multi-risk applications to the McNeal Agency, since Miss Cooper was unfamiliar with the rather new special multi-risk coverage required. Mr. Covey then told Miss Cooper what to fill out. As he put it:

"Well, we had all of the information, and I handed Dorothy Cooper the application and she put it in her typewriter and I stood over her and told her where to put this figure and what to 'X' here and so forth and so on." (Deposition of J. Dow Covey, p. 19.)

In filling out the application, the facts show that no one actually worked on it save Mr. Covey and Miss Cooper.

The completed application was then sent to Mr. Clifford Oxford, a stockholder in, and spokesman and attorney for, Marietta Investors. After a wait of some time, Mr. Covey went to Mr. Oxford's office and picked up the signed application.

The application was then sent to the home office of Pilot Life Insurance Company in Greensboro, North Carolina, for rating and approval. After approving the application, it appears that Pilot sent a copy of the policy to the Georgia Inspection & Rating Bureau, an association supported by Georgia's life insurance companies, for an audit. The original policy and copies were mailed to the agent, one copy for the agent, one copy for the insured, and the original to the mortgagee.

The total insurance written was for $432,000, covering the six buildings which were some 80% complete at the time. The policy was not a builder's risk policy, but was designed to cover the property and apartment house building when complete. The policy extended is styled an SMP–200 policy. At the time of issuance, however, an SMP–161 endorsement had been added to the policy extending the coverage provided by SMP–200.

Five months later, Marietta Investors wanted a building risk policy to cover 12 new building units, in the same apartment complex as the previous six, to be constructed by B. L. Ivey Construction Company. Marietta also wanted Ivey to be a co-insured along with itself on the new units.

Thus, on March 16, 1966, Marietta again requested McNeal Insurance Associates, through William McNeal, to secure coverage. On instructions from Marietta Investors, McNeal then instructed his insurance secretary, Dorothy Cooper, to get the best coverage available for the new units.

The procedure for application and issuance of the second policy was similar to that used for the initial policy. As before, Miss Cooper called Mr. Covey to help with the application for coverage. Miss Cooper's only directive from McNeal, representing Marietta Investors, was to secure the best possible coverage on the new units. This intention was conveyed by her to Mr. Covey.

As in preparation of the initial application, the depositions show that Covey was the guiding hand. Miss Cooper merely typed the application for builder's risk coverage from a version already drawn up by Covey. Covey did not set the premiums, but left the computation to the Greensboro office.

Covey had Miss Cooper write a note on the back of the application to Mr. William Brauns of the Greensboro office, which, in effect, asked that the new coverage be extended as a separate policy from the initial one issued on the six completed units. However, instead, Mr. Brauns issued an endorsement to the original policy covering the dwellings under construction. This endorsement is styled SMP–230 by the Pilot Fire & Casualty Company.

The application filled out by Covey and Miss Cooper requested SMP–70 coverage. Covey requested SMP–70 builder's risk coverage in order to give Marietta Investors the best coverage available, as they had desired.

According to Mr. Brauns, he wrote the SMP–230 endorsement with the intention that SMP–70 coverage be attached to the original and memorandum copy. There is no evidence or assertion this SMP–70 form ever reached the insured. Brauns states that he does not know whether or not an SMP–70 was in fact attached to the SMP–230. He does not have a copy of his original working copy, did not inspect the policy which was sent to see if an SMP–70 was attached, and the Greensboro office copy of the SMP–230 endorsement does not indicate, as it ordinarily would, that an SMP–70 was attached. However, premium payments were computed as if an SMP–70 had been attached to the SMP–230 endorsement. The SMP–230 coverage in and of itself included coverage for the dwellings under construction and also added the interest of the B. L. Ivey Construction Company to the policy.

On May 13, 1966, after heavy rains, building No. 11, one of the buildings covered by the new builder's risk policy,

collapsed. There is no contention that the policy in question was not fully in effect at the date of collapse. After a timely proof of loss statement was filed and payment refused by defendant, this suit was entered.

In brief, defendant contends that no payment is required because of the exclusions in SMP–70. They contend that SMP–70 must be considered as part of the coverage because plaintiffs paid premiums on the basis of an SMP–70 attachment to the SMP–230 endorsement and because the insurance contract should be reformed to include SMP–70 coverage, due to a mutual mistake by plaintiffs and defendant. In the alternative, defendant contends that plaintiffs were not entitled to payment because SMP–200, the initial policy, excluded damage by water pressure, the supposed cause of damage.

On the other hand, plaintiffs contend that there was no mutual mistake to permit reformation, only a unilateral error by defendant; that defendant was negligent in not attaching SMP–70 to the SMP–230 endorsement, and thus cannot reform the contract; and that plaintiffs had no reason to know that premiums were computed according to SMP–70 coverage. In addition, plaintiffs contend that SMP–161, the optional perils endorsement to SMP–200, supersedes the exclusions in SMP–200, thus requiring payment for damages.

The court will first consider the argument concerning the SMP–70 attachment. The court concludes that the contract should not be reformed to include the SMP–70 attachment.

■■ Georgia Code § 37–202 makes it clear that while equity will relieve mistakes in certain situations, "this power shall be exercised with caution, and to justify it the evidence shall be clear, unequivocal, and decisive as to the mistake." Because of this stricture, the courts in this state do not lightly reform contracts. It is a jurisdiction cautiously exercised. Cook v. Barfield, 224 Ga. 355. 162 S.E.2d 417 (1968); Prince v.

Friedman, et al., 202 Ga. 136, 42 S.E.2d 434 (1947); Delong v. Cobb, 215 Ga. 500, 111 S.E.2d 89 (1959); see, especially, Hood v. Connell, 204 Ga. 782, 783, 51 S.E.2d 853 (1949), and Minor, et al. v. Fincher, et al., 206 Ga. 721, 58 S.E.2d 389 (1950), which demonstrate the difficulty of showing a mutual mistake calling for reformation. A mutual mistake is generally considered one which is reciprocal and common to both parties, each laboring under the same misconception as to the terms of the contract. See, e. g., Delong v. Cobb, supra, 215 Ga. at 503, 111 S.E.2d 89. A crucial element is thus whether both parties are laboring under the same misconception. See Lanier v. American Casualty Co., 226 F. Supp. 630 (N.D.Ga., 1964).

While it is true that plaintiffs in the instant case requested the best coverage available and, without deciding, SMP–70 may have provided that coverage, plaintiffs had no reason to expect that SMP–70 had the specific exclusions of liability it contained. There was simply no mutual misconception.

The depositions show clearly that no agent of either plaintiff participated in preparing the application which requested SMP–70. Plaintiffs simply wanted the best builder's risk coverage available, having no idea which particular policy provided it. Their role in applying for and receiving SMP–70 was limited to the signature of Mr. Clifford Oxford on the completed application form. See Yablon v. Metropolitan Life Ins. Co., 200 Ga. 693, 38 S.E.2d 534 (1946), which evidences the importance attached to insured's lack of participation in the preparation of an insurance policy.

■■ Although William McNeal was president of both McNeal Insurance Associates and Marietta Investors, there is no reason to consider his insurance agency an agent for plaintiffs. McNeal played no part in drafting the application for the builder's risk policy, other than informing Miss Cooper, his insurance secretary, to secure the best coverage available. Under the facts of this

case, both Mr. Covey and Miss Cooper, who together made out the application for SMP–70 coverage, were agents of the defendant. Miss Cooper's employer, McNeal Insurance Associates, was, in effect, a soliciting agency for several insurance companies, including Pilot. Under Georgia law, such an agency, and thus Miss Cooper, its employee, are considered agents of the insurance company, not the insured. Thus, in writing the application for SMP–70 coverage along with Covey, Miss Cooper was an agent of Pilot, not of Marietta Investors or Ivey. Manis v. Pruden, 145 Ga. 239, 88 S.E. 967 (1916); State Farm Mutual Automobile Ins. Co. v. Collins, 75 Ga. App. 335, 43 S.E.2d 277 (1947); Travelers Insurance Co. v. Harrington, 75 Ga. App. 759, 44 S.E.2d 457 (1947). However, even if the McNeal Insurance Associates is considered an agent of the plaintiffs, the result is no different. The facts show that although she had passed certain insurance examinations, Miss Cooper was unfamiliar with the provisions of SMP–70 when she applied for it, nor did she or plaintiffs have any reason to think it was omitted from the policy given them by Pilot's Greensboro office. In applying for coverage Miss Cooper served as no more than a typist. Mr. Covey was the guiding hand.

As he has stated:

"You see, they don't know anything about the coverage, period. * * * they only wanted the best coverage available that I could provide, which I did provide for them. * * * The best possible coverage, whether it be form 5000 or what have you. They don't—they didn't have any idea what SMP–70 was." (Deposition of J. Dow Covey, p. 54.)

■ Marietta Investors and Ivey cannot be said to have committed a mistake. They had every reason to think they were getting the best coverage available. The most that can be said is that they lacked knowledge or were ignorant of the coverage actually extended them. Under prevailing Georgia law, this is not considered a mistake of fact for purposes of reformation. Prince v. Friedman, et al., supra; Camilla Feed Mills v. St. Paul Fire & Marine Ins. Co., 177 F. 2d 746, 13 A.L.R.2d 705 (5th Cir., 1949); Georgia Code § 37–210.

The fact that plaintiffs paid premiums computed on the basis of an SMP–70 attachment to the SMP–230 endorsement does not change the result. Plaintiffs had no reason to know on what basis their premiums were computed. The premium payments, in fact, were known only after the policy was issued, not when application was made, since computations were made only in Pilot's Greensboro office. See Yablon v. Metropolitan Life Ins. Co., supra, where payment of premiums on a double indemnity policy for 19 years was not considered controlling to block recovery under the permanent disability clause actually written into the policy by mistake of the insurer, in the presence of other considerations. There was only a unilateral mistake by defendant in the instant case.

■ Because we do not think that defendant has borne the difficult burden imposed on him in Georgia of showing mutual mistake, Wheeler v. Poole (Jackson), 204 Ga. 477, 480, 50 S.E.2d 326 (1948), it is not necessary to decide if the defendant is barred from seeking reformation due to its own negligence. Georgia Code § 37–211 states that, "If a party, by reasonable diligence, could have had knowledge of the truth, equity shall not relieve." Georgia case law is clear that one executing a contract or deed has the duty to read it and that negligence in not reading it before it is sent to one who acted in good faith can bar reformation by the negligent party. See Yablon, supra; Delong, supra.

Mr. Brauns, of Pilot's Greensboro office, admits that he did not check the insurance policy to see if SMP–70 was attached before it was sent. Moreover, the SMP–230 endorsement did not contain a notation that an SMP–70 form had been attached, as it ordinarily would

have had it been attached. If it were necessary for a decision here, the court would hold that this constituted negligence on the part of the defendant barring reformation.

Next, the court moves on to the interpretation of the exclusions in SMP–200 and SMP–161. This is a matter of construction of the original insurance contract which covered the six completed units and, through SMP–230, covers the new buildings constructed as well. There is no contention that the original policy is inapplicable to the new units.

■■■ This question of contractual interpretation can also be considered on summary judgment, since it is a "question of law for the court." Georgia Code § 20–701.

In 1965, when the insurance was secured on the six completed apartment units, the policy, an SMP–200 policy, contained an endorsement. This endorsement is an SMP–161 endorsement. Under SMP–200, Section I, Paragraph III, Pilot agreed to insure against

"* *. * (A)ll direct loss to the property covered caused by the following perils except as otherwise specifically provided."

The policy then described nine categories of loss which were covered, listed from "A" to "I". Most of the categories covered were limited by exceptions, included in Paragraph III with the extensions of coverage.

Section I, Paragraph V, enumerates certain general exclusions, further limiting coverage. In relevant part, it provides:

"This policy does not insure against: * * * C. * * * 4. water below the surface of the ground, including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors. * * * "

It is defendant's contention that this exclusion is applicable to the loss of building No. 11 and bars recovery.

An optional perils endorsement, dated October 13, 1965, is also a part of the policy as issued. This endorsement, styled SMP–161, extends the coverage of Section I, Paragraph III, supra, by adding five additional perils. These are listed as "J" through "N", thus continuing the lettering system of the initial perils covered in Section I, Paragraph III. In relevant part, the SMP–161 endorsement states that:

"Section I, Paragraph III, Perils Insured Against, of this policy is extended to include the following perils as defined and limited herein.

* *. * * * *

"N. Collapse of Building(s): Loss by collapse shall mean only the collapse of the building(s) or any part thereof. This Company shall not be liable as respects this peril for loss to * * * foundations, retaining walls, bulkheads, piers or wharves when such loss is caused by freezing, thawing, or by the pressure or weight of ice or water whether driven by wind or not; all except as the direct result of the collapse of a building."

Plaintiffs contend that only the exceptions written into SMP–161 limit liability under the policy for collapse of the building, not the general exclusions in the body of the policy, under Section I, Paragraph V.

The essential question before the court is whether the limits placed on the extended perils in SMP–161 are exclusive or whether they are subject to the general exclusions of Section I, Paragraph V, like the perils "A" through "I" in the body of the policy. The court holds that the general exclusions in Section I, Paragraph V, are not applicable to the perils in the SMP–161 endorsement and that these additional perils are subject only to the limits mentioned in the endorsement.

An ambiguity was created in this case by the language of the SMP–161 en-

dorsement. By its terms, it enumerates certain exceptions to coverage by stating that the perils listed are "defined and limited herein." It is unclear from the face of the endorsement whether "herein" refers only to the limits spelled out in the endorsement or whether it merely adds additional exceptions, all of which are subject to the general exclusions in Section I, Paragraph V.

In interpreting this language the court is mindful that the words of an insurance contract are to be understood in their plain, ordinary, popular sense. Atlas Assurance Co., Ltd. v. Lies, 70 Ga.App. 162, 27 S.E.2d 791 (1943). Moreover, the court recognizes that in Georgia an insurance contract is construed in favor of the insured and against the insurance company when its meaning is ambiguous. United National Ins. Co. v. Cody, 81 Ga.App. 527, 59 S. E.2d 310 (1950); Georgia, Sou. & Fla. Ry. Co. v. United States Casualty Co., supra, aff'd, 272 F.2d 712 (5th Cir., 1960). Georgia Code § 20–704(5) specifically states that:

"If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred."

This widely held principle applies equally to the interpretation of an ambiguous endorsement to an insurance policy. See, e. g., Ins. Co. of North America v. DeLoach and Co., 3 Ga.App. 807, 61 S.E. 406 (1900). Therefore, in the instant case, when it is unclear if the perils of the SMP–161 endorsement are subject to the general provisions of the policy, the construction most favorable to the insured must be given. In this case, that means limiting the coverage under the SMP–161 endorsement only by those exceptions mentioned in the endorsement itself. Policies of insurance, of course, are to be interpreted in favor of coverage. Stevens Industries, Inc. v. Maryland Cas. Co., 391 F.2d 411 (5th Cir., 1968); 44 C.J.S. Insurance § 297 at p. 1179.

Defendant argues against this construction by stating that the perils in SMP–161 are merely extensions of those in Section I, Paragraph III, which are subject to the general exclusions in Section I, Paragraph V. Thus, the added perils begin with "J", merely taking up from "I", where they ended in SMP–200. Defendant further argues that the exceptions and limits in SMP–161 are formulated precisely the way they are in SMP–200, where each peril covered is limited by its own specific exceptions (Section I, Paragraph III) as well as by the general exclusions in Section I, Paragraph V.

This argument would be persuasive if the language in the endorsement made it clear that the perils added by the endorsement were subject to all of the provisions of the basic policy. However, although given the opportunity, defendant did not write the policy in that manner. It is manifestly clear that the plaintiffs had no part in the formulation of the policy or the endorsement. Defendant insurance company did not state clearly in the endorsement what they now contend it means. Under the Georgia rules, as heretofore discussed, they are not entitled to a favorable construction of the ambiguity they created.

Defendant urges that the general rule of construing ambiguous insurance contracts against the insurer should not apply against them. It is their contention that the policy forms used

"* * * (A)re standard forms, as shown by the SMP numbers at the top of each form, approved by the Commissioner of Insurance of Georgia for issue by insurance companies doing business in Georgia. These approved forms have been adopted and approved just as much for the benefit of insureds in the position of the plaintiffs here as for the benefit of the insurance companies.

"Neither the insured nor the insurance company really had any choice so far as the language in these particular

forms is concerned." (Defendant's brief, at p. 11.)

Some jurisdictions have held that the rule of construction against the insured does not apply when standard forms are prescribed by statute. See cases cited in 44 C.J.S. Insurance § 297 at p. 1193, n. 19. However, in the instant case, the SMP forms used were not developed by the Georgia Insurance Commissioner. The court takes judicial notice [1] that these SMP multi-risk forms are developed by the company or an association representing insurance companies. The Georgia Insurance Commissioner only approves the final forms submitted. They are still prepared at the insurer's instance. The voice of the insured is not heard in preparation of these multi-risk policies, thus, the general rule of construction must apply. Johnson v. Mutual Life Ins. Co., 154 Ga. 653, 656, 115 S.E. 14 (1922); Penn Mutual Life Ins. Co. v. Childs, 65 Ga.App. 468, 16 S. E.2d 103 (1941).

Other considerations have also moved the court to rule in the plaintiffs' behalf. The original perils insured against in Section I, Paragraph III, which are subject to the general exclusions of Section I, Paragraph V, are limited by different language than that limiting the perils added by the SMP-161 endorsement.

In the case of the original perils, the pertinent passage is "except as otherwise specifically provided." In the SMP-161 endorsement, the perils insured against are merely "defined and limited herein." There is no reason to think that this latter phrase is meant to extend the exclusions in Section I, Paragraph V, to the endorsement in the same way a totally different phrase subjects the initial perils, "A" through "I", to these exclusions.

Moreover, under Section I, Paragraph V, of the policy, damage from water pressure is broadly excluded as a reason for recovery. Yet, in the endorsement, recovery is precluded under "L" and "N" for certain types of damage by water pressure. If the general exclusions of Paragraph V were meant to apply to the endorsement, as defendant contends, it is difficult to understand why mention was again made of water pressure.

█ Last, under Georgia Code § 56-2419, the court must interpret an insurance policy in its entirety, including any amplification, extension, or modification by a rider or endorsement. However, under the facts of this case, there is a conflict between the endorsement, which by its language seems to set exclusive limits on coverage, and the body of the policy, which sets out general exclusions in Section I, Paragraph V. In such a case the terms of the endorsement must apply, for it is a general principle of wide application in Georgia that when an endorsement or rider and a policy conflict, the former controls the latter, since it is a later expression of intent. Utica Mutual Ins. Co. v. Dunn, 106 Ga.App. 877, 129 S.E.2d 94 (1962); Hartford Accident & Indemnity Co. v. Hulsey, 220 Ga. 240, 138 S.E.2d 310 (1964); 48 A.L.R.2d 711, III § 8.

It is clear here that the SMP-161 is an endorsement by the title on its form and because it specifically extends coverage already provided in the body of the policy.

█ It is equally clear as enumerated above that the general rule should be followed here, even though the endorsement was a printed form like the policy itself. An endorsement need not be handwritten to control the policy. It controls even if it is stamped, Givens v. Aetna Life Ins. Co. of Hartford, Conn., Mo.App., 59 S.W.2d 761 (1933), or typewritten, Henderson v. Trans-Continental Mutual Ins. Co., 227 F.2d 106 (5th Cir., 1955); Bluewaters, Inc. v. Boag, 320 F.

---

1. Mr. Peter Kensicki, of the Rating Division of the office of the Georgia Insurance Commissioner, has informed the court that the Multi-Line Insurance Rating Bureau, an association of insurance companies, prepares the forms in connection with the insurers. He states that the Commissioner does not develop or adopt forms or require specific standard language.

2d 833 (1st Cir., 1963). The form of the endorsement is not crucial. The vital factor is rather that an endorsement or a rider is a later expression of intent by the parties and should control anything inconsistent with it in a previously drawn policy.

For the reasons stated above, the court grants plaintiffs' motion for summary judgment. The terms of SMP–70 are not applicable, and the exclusions in SMP–200, Section I, Paragraph V, do not apply to the perils added by SMP–161.