[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11697
_____

D.C. Docket Nos. 3:14-cv-00223-HLA-PDB,
3:14-cv-00491-HLA-JBT


J. GARY MARTIN,

Plaintiff - Counter
Defendant - Appellee,

versus

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,

Defendant - Counter
Claimant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 19, 2017)

Before TJOFLAT, JULIE CARNES, Circuit Judges, and CONWAY,[*] District Judge.

PER CURIAM:

This appeal addresses the amount of monthly disability benefits available under an insurance policy agreement.  Plaintiff Gary J. Martin filed this diversity action against Defendant Massachusetts Mutual Life Insurance Company ("MassMutual") for breach of an insurance policy under Georgia law and seeking declaratory relief as to the amount of monthly income benefits Mr. Martin is entitled to under the policy terms.  The district court found that the disability insurance policy issued by MassMutual to Mr. Martin in 1984 unambiguously provides to Mr. Martin full monthly income benefits as long as he remains disabled rather than a lesser amount of monthly income benefits under an extended monthly income rider.  MassMutual appeals the district court's grant of judgment on the pleadings in favor of Mr. Martin.

On appeal, MassMutual contends that the district court erred in applying Georgia law to determine the amount of monthly income benefits available under an extended monthly income rider added to the insurance policy.  After review of the record and with the benefit of oral argument, we reverse in favor of

---

[*]    Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

2

MassMutual.  Accordingly, we remand MassMutual's counterclaims for consideration by the district court.

## I.     BACKGROUND

The relevant disability insurance policy agreement was issued by MassMutual to Mr. Martin on December 4, 1984 (the "Policy").  [Doc. 2].[1]  The Policy has an expiration date of December 4, 2011 (the "Policy Expiration Date"), which was the next Policy anniversary date after Mr. Martin reached the age of 65.

On the December 4, 2011 Policy Expiration Date, Mr. Martin was receiving $9,830.40 in monthly income benefits.  [Doc. 2 at p. 5, ¶ 12].  MassMutual continued to pay Mr. Martin this amount in monthly income benefits until December 26, 2013, when MassMutual sent Mr. Martin a letter advising that it would be reducing Mr. Martin's monthly income benefit to $614.40.  [Doc. 2. at pp. 44–46].  MassMutual explained that the $9,830.40 was mistakenly paid to Mr. Martin beyond the Policy Expiration Date.  According to MassMutual, Mr. Martin was entitled only to the monthly income benefit provided by an "Extended Monthly Income Rider" (the "EMIR") that Mr. Martin had applied for and received with the Policy.  MassMutual further demanded that Mr. Martin provide reimbursement for overpayments in the amount of $215,692.20 that MassMutual

---

[1]     Because there are two consolidated cases involved, all record citations are made to *Martin v. Mass. Mut. Life Ins. Co*, No. 3:14–cv–223 (M.D. Fla. 2014).  Unless otherwise cited, all facts are taken from Mr. Martin's Complaint and the Policy language, [Doc. 2].

had made to Mr. Martin since the Policy Expiration Date.[2]  [Doc. 2 at p. 54].

Thereafter, the parties filed respective lawsuits.

Mr. Martin filed the first lawsuit against MassMutual in Florida state court, which was removed to the Middle District of Florida.  [Doc. 1].  This lawsuit was subsequently consolidated in Florida with a lawsuit MassMutual had filed against Mr. Martin in the Northern District of Georgia.  [Doc. 24].  In the Florida lawsuit, Mr. Martin brought claims for breach of contract and unfair settlement practices seeking declaratory relief.  [Doc. 2].  In the Georgia lawsuit, MassMutual brought claims against Mr. Martin for unjust enrichment and money had and received, which were reasserted as counterclaims in Mr. Martin's Florida lawsuit.  [Doc. 15].

The Policy provides for a $200.00 basic monthly income benefit.  [Doc. 2 at p. 15].  In addition to the basic monthly income benefit, the Policy contains several riders that provide potential additional monthly income benefits.  In the event the insured becomes disabled, as defined by the Policy, there is a "Maximum Benefit Period" during which monthly income benefits are distributed to the insured.  The Maximum Benefit Period is defined as "the maximum length of time that monthly income payments will be made for any one period of disability," and it further provides that payments "stop at the end of that time, even if the insured is still

---

[2]     This amount is the difference between the monthly payment of $614.40 that MassMutual contends is the correct amount and the $9,830.40 actually paid to Mr. Martin for the two years beyond the Policy Expiration Date.

disabled." The Maximum Benefit Period "can be continued to, but not including, the Expiration Date shown on the Schedule Page. Because of this, there is a limit on the Maximum Benefit Period. That is, no income payment will be made for any period after the Expiration Date."

In 1984, at the time the Policy was issued to Mr. Martin, he also applied for two riders[3]: (1) the abovementioned EMIR, and (2) the "Income Adjustment Rider" (the "IAR"). In 1986, two years later, Mr. Martin added a third rider to the Policy, the "Additional Monthly Income Rider" (the "AMIR").

The EMIR expressly "provides an extended monthly income for disability of the insured." [Doc. 2 at pp. 35–36]. "Extended" is defined as income that "will begin after the Policy Anniversary Date which is on or next follows the Insured's 65th birthday," which is the same date as the Policy Expiration Date. Furthermore, the EMIR language expressly states that the "income payments provided by this rider are computed from the Expiration Date of the policy. That is, payments accrue from that date with the first payment due one month later. Then, future payments are due on the same day of each month thereafter."

To qualify for EMIR benefits, four requirements must be met. In the district court, there was no dispute that Martin has fulfilled these requirements. Once all

---

[3]     Mr. Martin received other riders in addition to these two, none of which are relevant in this action.

5

requirements are satisfied, Mr. Martin is entitled to receive EMIR monthly income benefits for as long as he remains disabled.

Additionally, a Table of Extended Monthly Income (the "Table") attached to the EMIR is used for determining the amount of monthly income benefits an insured is entitled to under the rider.  [Doc. 2 at p. 37].  Pursuant to the Table, if an insured's loss of earned income due to disability is more than 75%, and began on or before December 4, 2000, the insured's "Amount of Extended Monthly Income" is $200.00.  However, if an insured's over-75% loss of earned income occurs after that date, the Table provides for a reduction in the "Amount of Extended Monthly Income."  This reduction applies in each subsequent year up until December 4, 2006, at which time the insured will not be entitled to monthly income benefits under the EMIR.  Because Mr. Martin became disabled on or about the year 1995, he was entitled to the full $200.00 monthly income benefit pursuant to the Table. [Doc. 2 at p. 5, ¶ 14].

The Policy provides an instructive example of EMIR monthly income benefits:

> You become disabled at age 50.  You have a Loss of Earned Income of more than 75% for each month of disability and income payments under the policy are made to the Expiration Date of the policy.  At that time, income payments under the policy end since the Maximum Benefit Period for the policy has been completed.  However, if you continue to be disabled,

6

> income payments will be made under this rider.  These income payments will continue as long as you remain disabled.

[Doc. 2 at p. 35].

In contrast to the EMIR, which does not provide benefits during the Maximum Benefit Period, two riders that Mr. Martin added to the Policy increase the $200.00 basic monthly income benefit during the Maximum Benefit Period. The IAR is a cost of living adjustment based on the Consumer Price Index and generally provides for annual increases in the amount of disability income under the Policy.  [Doc. 2 at pp. 28–31].  By express language, the IAR provides income adjustment increases to both the $200.00 basic monthly income benefit under the Policy and to any additional monthly income provided by the Policy's riders.

Next, the AMIR expressly "provides a monthly income in addition to the income provided by the policy."  [Doc. 2 at pp. 42–43].  Martin made two applications for the AMIR in 1986: one for an additional monthly income amount of $2,000.00 and another for an additional monthly income amount of $1,000.00. There is no dispute that Martin met the requirements for the AMIR and properly received AMIR monthly income benefits during the Maximum Benefit Period. Both the IAR and the AMIR have a "Termination of this Rider" provision stating that the "Expiration Date of this rider is the same as the Expiration Date of this policy."

All of the abovementioned riders state that the rider is made a part of the Policy, and the Policy provisions apply to the rider "except for those that are inconsistent with this rider." Additionally, the Policy has a "Schedule Page" that shows the $200.00 basic monthly income benefit; the Policy Expiration Date of December 4, 2011; the amount of premiums required for the Policy and the riders; and additional monthly income benefits provided by any riders.[4] [Doc. 2 at pp. 15–16].

During the Maximum Benefit Period, Mr. Martin's monthly income benefits were calculated as follows: the $200.00 basic monthly income benefit, plus the $3,000.00 AMIR benefit, both of which were increased by the IAR. The total monthly income benefit at the time of the Policy Expiration Date was $9,380.40 per month. Mr. Martin argues that, because of the addition of the EMIR to the Policy, he is entitled to this amount as long as he remains disabled. [Doc. 19]. In contrast, MassMutual maintains that, since the Policy Expiration Date has passed, the monthly income benefit includes only amounts provided by the express language of the EMIR. [Doc. 23]. According to MassMutual, this is a "new benefit" that includes the monthly $200.00 base income amount provided by the Table and the corresponding IAR increase. At the time the lawsuit was filed this

---

[4]    On the Schedule Page, under the "Benefit" section, the EMIR states, "see table attached to the rider." Under the "Benefit" section for the AMIR, it states "$3,000.00." Under the "Benefit" section for the IAR, it states "see rider." [Doc. 2]

8

amount totaled $614.40 in monthly income benefits.  [*Id*.]  The district court agreed with Mr. Martin's interpretation of the Policy and granted judgment on the pleadings in his favor.  [Doc. 28].

## II.    STANDARD OF REVIEW

We review an order granting a judgment on the pleadings *de novo*.  *Perez v. Wells Fargo, N.A., 774* F.3d 1329, 1335 (11th Cir. 2014).   "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  *Interline Brands, Inc. v. Chartis Specialty Ins. Co*., 749 F.3d 962, 965 (11th Cir. 2014).  "We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*

## III.    DISCUSSION

The narrow issue on appeal is whether Mr. Martin's addition of the EMIR to his Policy also extended the monthly income benefits payable under the AMIR beyond the Policy Expiration Date.  Notably, there is no dispute that Mr. Martin is entitled to the $200.00 EMIR monthly income benefits and the IAR increase of those benefits.  [Doc. 28 at p. 15].

Both parties agree that Georgia contract law governs this action based on diversity-of-citizenship.  In Georgia, "an insurance contract is governed by the ordinary rules of construction and should be construed to ascertain the intention of

the parties." *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838, 413 S.E.2d 430, 431 (Ga. 1992). "Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719, 784 S.E.2d 422, 424 (Ga. 2016). In contrast, if the policy is ambiguous, the court must construe the policy to mean what a reasonable person in the insured's position would understand the terms to mean. *Ga. Farm Bureau Mut. Ins. Co. v. Hunke*, 240 Ga. App. 580, 524 S.E.2d 302, 303 (Ga. Ct. App. 1999). "The contract is to be construed as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328, 498 S.E.2d 492, 494 (Ga. 1998).

Georgia law requires insurance policies be read *in pari materia*. O.C.G.A. § 33-24-16. Therefore, the insurance policy is construed "according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement or application made a part of the policy." *Id*. When the language in an endorsement or rider conflicts with the policy, the rider controls, *B.L. Ivey Const. Co. v. Pilot Fire & Cas. Co*., 295 F. Supp. 840, 848 (N.D. Ga. 1968), and a specific provision will prevail over a general one, *Holland v. Holland*, 287 Ga. 866, 868, 700 S.E.2d 573, 575 (Ga. 2010). It is well-

10

established that a court should avoid interpreting a contract in such a way as to render portions of the language of the contract meaningless. *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576, 649 S.E. 2d 740, 745 (Ga. Ct. App. 2007).

Neither party argued to the district court that the Policy was ambiguous. [Docs. 19 & 23]. Therefore, we look to the Policy alone and its provisions are given their ordinary meaning. *Taylor Morrison Servs, Inc.*, 293 Ga. at 459–460. The district court held that, once the EMIR was added to the Policy, and all requirements for monthly income benefits under the EMIR were satisfied, the EMIR extended the Maximum Benefit Period of the Policy. [Doc. 28 at p. 14].

Under this interpretation, the district court held that Mr. Martin was entitled to the $200.00 EMIR monthly income benefit, the $3,000.00 AMIR monthly income benefit, and the corresponding IAR increase of those amounts. [*Id*. at p. 17–18]. According to the district court, the AMIR included a termination date on the Policy Expiration Date only because it could have been added to the Policy without adding the EMIR. [*Id.* at p. 16]. Since the EMIR had been added to Mr. Martin's Policy before the AMIR, the Maximum Benefit Period was extended. [*Id.* at p. 17]. The AMIR benefits continue pursuant to the EMIR because there is no language limiting Mr. Martin's entitlement to AMIR benefits. [*Id.*] Therefore, the district court concluded that it is inconsistent to interpret the Policy as terminating

11

although Mr. Martin has satisfied the requirements to receive EMIR monthly income benefits. [*Id*., n.4].

On appeal, MassMutual maintains that the clear and unambiguous language of the EMIR provides for a new monthly income benefit that is first payable to Mr. Martin after the Maximum Benefit Period has expired.  According to MassMutual, the language of the EMIR is quite clear that benefits payable under that rider are computed from the Policy Expiration Date.  The example in the EMIR further reinforces this interpretation by providing that, once income payments under the Policy have been made to the Policy Expiration Date, "income payments under the policy end since the Maximum Benefit Period for the policy has been completed."

If the EMIR extended the Maximum Benefit Period, as the district court determined, MassMutual argues that monthly income benefits payable under the EMIR would essentially never begin.  We agree with this interpretation. The district court's conclusion that the EMIR extended the Maximum Benefit Period is inconsistent with the language of the EMIR, which provides that monthly income benefits commence on the Policy Expiration Date.  This interpretation is supported by the Policy definition of the Maximum Benefit Period, which states that it ends on the Policy Expiration Date.

Furthermore, both Mr. Martin and the district court fail to cite specific language in the Policy or the EMIR that extends the Maximum Benefit Period for

12

the lifetime of Mr. Martin's disability.  Such an interpretation renders meaningless clear and unambiguous provisions of the Policy.  For example, Mr. Martin's and the district court's interpretation ignores specific language in the AMIR that provides that income benefits payable under the AMIR terminate on the Policy Expiration Date.  Importantly, the AMIR was added to the Policy two years after the EMIR.   According to Georgia law, the termination date of the AMIR, which is both specific and inconsistent with the EMIR termination date, controls when monthly income benefits payable under the AMIR terminate. *See B.L. Ivey Const. Co*., 295 F. Supp. at 848 ("it is a general principle of wide application in Georgia that when an endorsement or rider and a policy conflict, the former controls the latter, since it is a later expression of intent.").

In contrast, the specific language of the EMIR controls the amount and availability of its monthly income benefits.  Notably, there is no language in the EMIR that could reasonably be construed as extending monthly income benefits payable under a separate rider that was not a part of the Policy at the time Mr. Martin added the EMIR to the Policy.  The EMIR explicitly provides (1) a specific date in which "income payments provided by this rider" are to begin (the Policy Expiration Date), and (2) a $200.00 monthly income amount established by a Table that is attached to the rider in the Policy.  Additionally, the parties do not dispute that the IAR increase continues to apply to the EMIR monthly income

13

benefits because the IAR expressly provides that "increases will be made in The Monthly Income provided by *any rider*." (emphasis added).

Therefore, we find that the district court's interpretation ignores specific language in the Policy riders.  Both Georgia law and the Policy's riders provide that, to the extent the language in the riders is inconsistent with the general language of the Policy, the language of the rider controls.  The district court's conclusion—that the EMIR extended the Maximum Benefit Period for all monthly income benefits payable under the Policy and any riders added thereafter—is neither supported by the plain language of the Policy nor the specific language of the riders.  The AMIR monthly income benefits terminate on the Policy Expiration Date, and the EMIR monthly income benefits explicitly begin after that date.  Therefore, we find that the plain and unambiguous language of the Policy provides that monthly income benefits payable after the Policy Expiration Date are limited to the $200.00 monthly income benefit payable under the EMIR and the associated IAR increase.

Lastly, in addition to ruling in favor of Mr. Martin on the breach of contract claim, the district court *sua sponte* ruled against MassMutual on the merits of its counterclaims for unjust enrichment and money had and received.  [Doc. 28 at pp. 18–21].  Prior to the district court's decision, the parties did not brief the merits of these claims.  On appeal, the parties present arguments not raised or addressed in

14

the district court. Accordingly, we reverse and remand for consideration of MassMutual's counterclaims.

## IV.    CONCLUSION

For the foregoing reasons, we reverse the grant of judgment on the pleadings in favor of plaintiff J. Gary Martin on plaintiff's Counts I & II and on defendant Massachusetts Mutual Life Insurance Company's counterclaims.

Accordingly, we vacate the amended judgments entered in favor of plaintiff J. Gary Martin on defendant Massachusetts Mutual Life Insurance Company's counterclaims and on plaintiff J. Gary Martin's Counts I & II in case number 3:14–cv–223 and case number 3:14–cv–491. The district court shall enter judgment in favor of defendant Massachusetts Mutual Life Insurance Company on plaintiff J. Gary Martin's Counts I & II.

We remand the case to the district court for consideration of defendant Massachusetts Mutual Life Insurance Company's counterclaims.

**REVERSED, VACATED, and REMANDED.**